Dennis *v.* Dennis.

---

DENNIS *v.* DENNIS.

### (*Jackson.* June 14, 1900.)

1. DESCENT AND DISTRIBUTION. *Bastards.*

   Under the rules of the common law, a bastard had no inheritable blood, but this has been changed by statute in this State. (*Post, p. 90.*)

   Code construed: §§ 4163, 4169 (S.); §§ 3268–3270, 3274 (M. & V.); §§ 2420, 2423*a* (T. & S.).

2. SAME. *Same.*

   Testatrix, by her will, gave a residuary legacy to her "heirs and distributees." Three brothers, one sister, and an illegitimate child of a deceased sister survived her, and constituted her only "heirs and distributees." The right of the illegitimate is questioned.

   *Held*: Under the will and the statutes the illegitimate takes through its mother the same interest in the legacy that the mother would have taken if she had survived testatrix. (*Post pp. 87–96.*)

   Code construed: §§ 4163, 4169 (S.); §§ 3268–3270, 3274 (M. & V.): §§ 2420, 2423*a* (T. & S.).

   Cases cited and distinguished: Loughlin *v.* Johnson, 102 Tenn., 460; Shepherd *v* Carlin, 99 Tenn., 67; Brown *v.* Kerby, 9 Hum., 461.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

R. L. BARTELS, JOHN J. GORE and TURLEY & TURLEY for complainant.

THOS. H. JACKSON for defendants.

Dennis *v.* Dennis.

WILKES, J. Mrs. Anna Bingham died in March, 1898, leaving a paper writing which was afterward sustained as her will (except that the thirteenth item was held inoperative), and under it passed a residuary legacy to her heirs and distributees. She left surviving her three brothers and one sister. Complainant also survived her, and claims to be one of her distributees and heirs.

He is an illegitimate son of Patsey Caroline Dennis, a sister of Mrs. Bingham, who died before Mrs. Bingham. The question raised is, whether this illegitimate son of the sister who died before Mrs. Bingham is entitled to take the share the sister would have taken, had she survived Mrs. Bingham. The question was raised by demurrer in the Court below. The Court overruled the demurrer, thus holding the right of the illegitimate to take, and defendants have appealed and assigned errors which present the same question in this Court.

The defendants rely upon the case of *Giles* v. *Wilhoit,* 48 S. W Rep., 268, a case decided by the Court of Chancery Appeals and affirmed by this Court, as to the result reached and announced. This case is referred to and commented upon in *Laughlin* v. *Johnson,* 18 Pickle, 460.

The case of *Shepherd* v. *Carlin,* 15 Pickle, 67, is also referred to and relied on by defendants, as well as *Brown* v. *Kerby,* 9 Hum., 461. The contention, in short, is that complainant has no

inheritable blood, and is not entitled to take from the estate of Mrs. Bingham, along with her legitimate brothers and sisters, his mother having died before Mrs. Bingham.

The case of *Giles* v. *Wilhoit,* 48 S. W. Rep., 268, involved a construction of § 4166, Shannon's Code, which designates what persons shall inherit the estate of an illegitimate. The exact question which arose was, whether a bastard nephew, born of a bastard sister, could inherit from a bastard uncle equally with a living bastard sister of the bastard uncle, and this Court held that the word "descendants," within the meaning of the above statute, applied to legitimate descendants of the brothers and sisters of the illegitimate. This case, therefore, involved the construction of a statute with which the case at bar has nothing to do.

The case of *Laughlin* v. *Johnson,* 18 Pickle, 455, involved the construction of the latter part of § 4169 of Shannon's Code, and the sole question there determined was that an illegitimate brother could inherit equally with his legitimate brothers and sisters the property of a deceased legitimate sister, who died without her husband surviving her, or without issue, and who acquired the property through her husband. The case at bar in no way involves that portion of § 4169 of the code which is construed in the case of *Laughlin* v. *Johnson,* supra.

Dennis *v.* Dennis.

The case of *Shepherd* v. *Carlin,* 99 Tenn., 64, involved the construction of our statute which provided that slaves who, prior to the passage of that statute, had lived together as husband and wife, were to be thereafter considered as such, and, further, legitimatized children which had been born to them prior to the passage of this Act. The statute is in these words: "All free persons of color who were living together as husband and wife in this State while in a state of slavery, are hereby declared to be man and wife, and their children legitimately entitled to an inheritance in any property heretofore acquired, or that may be hereafter acquired, by such persons, to as full an extent," etc. This Court held that a child who was legitimatized under the above statute, and whose parents had died prior to the death of the child's aunt and uncle, from whom it sought to claim an inheritance— the aunt and uncle dying without issue, and intestate—was not entitled to inherit from such aunt and uncle. This Court placed this decision upon the ground that the statute in question admitted of no other construction than that given it, namely, that the children of slaves were legitimatized, and could inherit only the property which their parents had "acquired."

As the plain words of the statute precluded a child from inheriting, except as to such property as its parents had "acquired," and, as the parents being dead, of course did not "acquire" this prop-

erty, either in law or fact, the child could not inherit this property.

Under the common law, a bastard had no inheritable blood.

The first act which changed the common law was that of 1819, Chapter 13, Sec. 1, which is in these words: "When any woman shall die intestate, having a natural born child or children, and no legitimate child or children, such natural born child or children shall take, by the general rules of descent and distribution, the estate, real and personal, of his or their mother, and, should either of said children die intestate, without child, his or her brothers and sisters shall in like manner take his or her estate." Under this Act an illegitimate child could inherit from its mother, provided its mother had no legitimate child or children. This Act remained in force until the Code of 1858 was adopted. By the adoption of this code, the Act not being incorporated therein, it was repealed, and, until the Act of 1866-67, Chap. 36, Sec. 10, was passed, no law in regard to illegitimates inheriting was in force. The Act of 1866-67 is in these words: "Where any woman shall die intestate, having a natural born child or children, whether she also have a legitimate born child, or otherwise, such natural born child or children shall take, by the general rules of descent and distribution, equally with the other children, the estate, real or personal, of his or her

Dennis *v.* Dennis.

and their mother; and, should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate." This act is incorporated into Shannon's Code as § 4169, and this is the Act which this Court is called upon to construe in this case, in connection with the general statutes of descent and distribution. Section 4163, subsection 2 (*a*), Shannon's Code, is in these words: "If the intestate die without issue, his land shall be inherited by his brothers and sisters of the whole and half blood, born before his death or afterwards, to be divided amongst them equally, and if any such brother and sister die in the intestate's lifetime, leaving issue, such issue shall represent their deceased parent, and be entitled to the same part of the estate of the uncle or aunt as their father or mother would have been entitled to if living."

The Act of 1819 expressly excluded inheritances by illegitimates in the event that the mother had a legitimate child. The Act of 1866-67 not only extended the right of illegitimates to inherit from their mother, even though there were legitimate children living at the time, but it also expressly provided that the illegitimates should inherit "by the general rules of descent and distribution, equally with the legitimate child or children."

Now, it is conceded that had the complainant in this case been legitimate, there would be no

question as to the right to take his mother's por-
tion of the property involved in this litigation,
because the statute of descent and distribution ex-
pressly provides that, in the event of the death
of the brother or sister of the intestate during
the intestate's lifetime, leaving issue alive, such
issue shall represent and take such estate as the
deceased parent would have taken. Nor will it be
denied that had the mother of complainant left
a legitimate child, as well as complainant, then
that legitimate child would have taken that por-
tion of the estate of the mother's sister which
the mother would have taken. If this be true,
and the statute of 1866-67 gives to illegitimates
the right to inherit from their mother, equally
with the other child or children, the estate of the
mother, according to the general laws of descent
and distribution, does it not necessarily follow that
the illegitimate could inherit equally with the le-
gitimate, and in the same manner? The statute,
§ 4169 of the code, therefore, gives to the illegiti-
mate the same right to inherit from their mother
as the legitimate children. The illegitimates are
put on the same plane and footing as the legiti-
mates, so far as the purpose of inheriting from
the mother is concerned, and for this purpose
they are legitimate. They then have all the same
kindred as her legitimate children have, and when
the latter take by descent and distribution, accord-
ing to the degrees prescribed by statute, the ille-

gitimates take "equally" with them. The illegitimates take in the same character and in the same manner, as well as to the same extent, as the legitimates, and, therefore, complainant inherits from his aunt that portion of the estate which his mother would have inherited had she been living.

Taking up the case of *Brown* v. *Kerby,* 9 Hum., 461, it is to be distinguished from the case at bar, in that it involves, solely, the construction of the Act of 1819, which simply provided to what extent an illegitimate could inherit. The provision in the Act of 1819 expressly precluded the illegitimate from inheriting where there was a natural born legitimate child living at the death of the intestate (mother), and necessarily precluded the idea that the illegitimate was put upon the same plane and footing as the legitimate, while the Act of 1866-67 necessarily makes an illegitimate, so far as inheriting from its mother is concerned, the equal of the legitimate.

The case of *Cherry* v. *Mitchell,* decided by the Court of Appeals in Kentucky on the 10th day of March, 1900, and reported in the Southwestern Reporter in No. 7 of Vol. 55, of date April 2, 1900, is in point. Cherry, by a will, devised his estate to his daughter, Mary. Mary gave birth to an illegitimate child, and died in a few days thereafter. Two weeks after the death of Mary, her father, the testator, died, and his will was

duly probated. The date of the will was many years previous to the birth of the illegitimate child of his daughter. The illegitimate sued to recover the estate which Cherry had devised to the illegitimate's mother, and the defense was that the child could not take the estate, as it had no inheritable blood, except as to its mother, and that the mother had died prior to the death of the testator. The statute of Kentucky in regard to the inheritance of illegitimates is in these words: "Bastards shall be capable of inheriting and transmitting inheritances on the part of or to the mother." There is also a statute which provides that if a devisee or legatee die before the testator, leaving issue which survives the testator, such issue shall take the estate devised or bequeathed as the devisee or legatee would have done if he had lived; and the question for determination in that case was whether or not the illegitimate came within the meaning of the last quoted statute. The Court of Appeals there held that the word "issue" included the illegitimate, and that it was entitled to receive the estate which had been devised to its mother, she having died before the testator.

The case of *Grundy* v. *Hadfield,* 16 R. I., 579, was where a man died leaving no issue, father or mother, but left, as his only heirs, a sister, two brothers, the issue of two deceased brothers, and a niece, who was a child of his illegitimate deceased

half sister. The child of the intestate's illegitimate deceased half sister sued the brothers and sister of the intestate for a share of the estate. The statute of Rhode Island is in these words: "Bastards shall be capable of inheriting or transmitting inheritances on the part of the mother, as if legally begotten of such mother." There was also a statute of descent and distribution in these words: "Descendants of any person deceased shall inherit the estate which such person would have inherited had such person survived the intestate." The Court held that the illegitimate sister, if living, would have been entitled to her share in the estate of her brother, the same as if she were the legitimate half sister of the intestate on the mother's side, and hence her issue under this statute above quoted was entitled to receive that which the mother would have inherited had she lived.

In *Dickinson's Appeal,* 42 Conn., p. 491, *et seq.,* it was held that the legitimate grandchildren could inherit through the illegitimate mother and legitimate grandmother from an unmarried sister of their grandmother, recognizing the right of illegitimates to inherit from collateral kindred—that is, an illegitimate was held to have the power to inherit through its legitimate mother from the mother's legitimate sister (illegitimate's aunt), which is the case at bar. In Connecticut, the law in regard to inheritance by bastards, as well as the

general statutes of descent and distribution, are similar to ours. The illegitimate child inherits from its mother the same as if legitimate, and the issue of the brother and sister is entitled to the inheritance which its parents would have received had it survived those from whom the inheritance was derived. To the same effect is *Bennelt* v. *Toler,* 15 Gratt., 588, 627, *et seq.*

Hence it can be seen that other States and statutes on the question of inheritance by illegitimates, as well as statutes prescribing the general rules of descent and distribution, which are similar to those of our own State, allow an illegitimate nephew to inherit through its mother that estate which its mother would have received from collateral kindred had she survived. such kindred.

We think the fallacy in the opposite view is in holding the inheritance as passing from Mrs. Bingham direct to the nephew, while it passes through the. mother, Patsey Caroline Dennis, and rests in complainant as her distributee. Inasmuch as the illegitimate, under § 4169, takes by the general rules of descent and distribution, he inherits the share which his mother would have inherited if she had survived her sister.

The decree of the Chancellor is affirmed, with costs, and the cause remanded to be further proceeded in.