S. C. TIGERT *v.* ANNIE WELLS AND HUSBAND.

(*Nashville.*    December Term, 1915.)

1. BASTARDS. Inheritance. "Any woman."

Shannon's Code, sec. 4169, providing that where "any woman"
shall die intestate, leaving a natural-born child, whether she
also. leaves legitimate children or otherwise, the natural-born
child shall take by general rules of descent and distribution,
equally with the other children, applies where the woman, when
she became a mother, was a slave, in view of the earlier
Acts 1865, ch. 40, giving colored persons the right to inherit.
(*Post, pp.* 146, 147.)

Acts cited and construed: Acts 1865-67, chs. 36, 40, sec. 10.

Case cited and approved: McCline v. Ridley, 183 S. W., 736.

Code cited and construed: sec. 4169 (S.).

2. BASTARDS. Inheritance. Grandchild.

Shannon's Code, sec. 4169, permitting inheritance by a natural-born
child equally with other children from the mother, gives a
natural grandchild the right to inherit from the mother of its
parent who was an illegitimate. (*Post, pp.* 147, 148.)

Case cited and approved: Turnmire v. Mayes, 121 Tenn., 45.

3. BASTARDS. Inheritance. Presumption.

Where it appears that a natural-born person died in March, 1867,
it will be presumed in favor of the right of inheritance that she
died after the enactment of Act. March 8, 1867 (Shannon's
Code, sec. 4169), giving natural-born persons the right of
inheritance from their mothers. (*Post, p.* 148.)

Act cited and construed: Act 1867, ch. 36.

Tigert v. Wells.

FROM LINCOLN.

Appeal from the Chancery Court of Lincoln County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals, from the Supreme Court.— WALTER S. BEARDEN, Chancellor.

SAM C. TIGERT and J. E. ROUTT, for plaintiff.

M. W. WOODWARD, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed by Tigert, as administrator of the estate of Scipio Simmons, a colored man, to bring real estate to sale as that of decedent, for the payment of his debts.

The property is claimed by defendant, Annie Wells, also a person of color; and the contest is between Annie Wells and Scipio Simmons' personal representative.

The property belonged to Sarah Simmons, the wife of Scipio. Sarah died in 1904.

Annie Wells is the natural granddaughter of Sarah. Her mother, Maria, was the daughter of Sarah, born out of wedlock before the latter's marriage to Scipio. Maria died in March, 1867.

134 Tenn. 10

After the death of Sarah in 1904, Scipio and the natural grandchild of his wife, Sarah, continued to reside on the property. At the death of Scipio, Annie Wells set up a claim that the property had descended to her by representation, or by right of her mother, Maria.

The position of the complainant administrator is that Annie Wells as the daughter of an illegitimate is not entitled to inherit, and that on the death of Sarah the absolute title passed to her husband, Scipio; the daughter being thus disentitled.

In behalf of the granddaughter, it is urged that the right to inherit through her mother (possessed of heritable blood) is given by Acts 1866-67, ch. 36, sec. 10 (Code, Shannon, sec. 4169) as follows:

"Where any woman shall die intestate, having a natural-born child or children, whether she also leaves a legitimate child or children, or otherwise, such natural-born child or children shall take, by the general rules of descent and distribution, equally with the other child or children, the estate, real and personal, of his, her, and their mother; and, should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate."

In opposition, the administrator of the husband's estate takes the position that all of the persons named above were slaves before or during the Civil War, and that the statute above quoted is not to be constru-

ed as governing the inheritance of property from or by such.

Another and earlier statute (Acts 1865-66, ch. 40) had provided that "persons of color have the right to inherit." While it may be that this earlier statute did not reach back and validate previous slave marriages for purposes of inheritance, we think that the two enactments should be read together, and, when done, it becomes manifest that the legislature intended by the phrase "any woman" in the later act to include women who may have become mothers while yet slaves, so as to give their children, though illegitimate, the right to inherit their property. See, in this connection, *McCline* v. *Ridley,* 183 S. W., 736, decided this day.

While the language of the Act of 1866-67 does not in explicit or direct terms provide for inheritance by the grandchild of a bastard, it has been held that the act should be construed in connection with, or as supplemented by, the general statute of decent and distribution, with the result that, so far as the right of inheriting the property of the mother is concerned, an illegitimate is put on the same plane as the legitimate child, so that "illegitimates take in the same character and in the same manner, as well as to the same extent, as the legitimates." *Dennis* v. *Dennis,* 105 Tenn., 86, 93, 58 S. W., 284, 286.

The spirit of the clause at the close of the act, "should either of such children die intestate, without child, his, or her, brothers and sisters shall in like manner take his, or her, estate," would seem to be that,

if such a woman leave a natural grandchild, that grand-child may inherit through her mother's right that which but for her death would have gone to the mother. *Turnmire* v. *Mayes,* 121 Tenn., 45, 54, 114 S. W., 478.

No question is made that Maria, the, mother of Annie Wells, was at the date of her death in March, 1867, not possessed of inheritable blood by virtue of the Act of 1866-67 passed March 8, 1867, and which took effect from its passage.

The proof is not definite respecting the exact date of the death of Maria. As stated, it is to the effect that she died in the month of March, 1867. We think that the strong presumption and intendment indulged by the law in favor of legitimacy should here be given play; and we shall presume that Maria died after the passage of the act on March 8, 1867, and that she took, by its terms and force, inheritable blood. Her child Annie Wells by representation takes her place.

The court of civil appeals, reversing the chancellor, so held. Writ of *certiorari* having been granted, the judgement of that court is affirmed.