WASHINGTON SOUTHGATE *vs.* ANDREW ANNAN, Executor of DAVID MORRISON, and OLIVER and REUBEN MORRISON.

*Right of the Husband of an Illegitimate woman to the Real estate, of which she died seized Intestate, and without heirs—Construction of Statutes—Effect of Special Legislation upon the Construction of General Laws.*

The last clause of the first section of the Act of 1820, ch. 191, (sec. 23, Art. 47 of the Code,) relating to the descent of the real estate of an intestate, is in the following words : "And if there be no descendants or kindred of the intestate as aforesaid, to take the estate, then the same shall go to the husband or wife, as the case may be, and if the husband or wife be dead, then to his or her kindred, in the like course as if such husband or wife had survived the intestate, and then had died, entitled to the estate by purchase ; and if the intestate has had more husbands or wives than one, and all shall die before such intestate, then the estate shall be equally divided among the kindred of the several husbands or wives, in equal degree equally." An illegitimate woman purchased land in 1829, married in 1831, and died intestate in 1853, never having had any children, leaving no brothers or sisters, or descendants of brothers or sisters, or other descendants, or kindred, and leaving her husband surviving her, HELD :

That the husband was entitled to the land.

Special Acts of Assembly, where parties choose to ask the aid of the Legislature in favor of rights considered doubtful, can never be regarded by the Courts as binding and authoritative expositions of the provisions of existing general laws.

APPEAL from a decision of the Commissioner of the Land Office.

The land in controversy was conveyed to Prudence Biggs on the 28th of December, 1828. While seized of this land, on the 15th May, 1831, she intermarried with David Morrison, and about the year 1853 died, never having had any child or descendant, and having no

8                    v. 31

brother or sister, or descendant of any brother or sister, or other descendants or kindred, but leaving her husband, David Morrison, surviving her. David Morrison died about 1855-6, after having executed his last will and testament, whereby he made the appellee, Annan, his executor, and authorized him to sell the farm he occupied, and to invest the proceeds for his brother, Andrew Morrison, and then, by this will, gave all the rest and residue of his estate, real and personal, to the appellees, Oliver and Reuben Morrison, his nephews.

Washington Southgate, the appellant, on the 22d of March, 1866, applied to the Commissioner of the Land Office, and obtained a special escheat-warrant for said land, claiming that they had escheated to the State for want of heirs of Prudence Biggs. On the return of the warrant, a caveat was filed by the appellees, and was sustained by the commissioner, whereupon this appeal was taken by the caveatee.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*Jos. M. Palmer*, for the appellant, cited the Act of 1831, ch. 23.

*A. B. Hagner* and *A. Randall*, for the appellee.

Prudence Morrison (formerly Biggs) having died seized of the land in question, intestate, without issue, and without having any descendants or kindred, her surviving husband, David Morrison, became entitled to it. *Act of* 1820, *ch.* 191, *sec.* 1; *Code, Art.* 47, *sec.* 23.

The illegitimacy of the wife, Prudence Morrison, can in no way impair the marital rights of David Morrison, her surviving husband, who claims by virtue of the *marriage contract.* 1 *Coke Litt.* (*Thomas' Edition*), 173, *top note (K.)*; 1 *Woodeson's Lectures*, 237, *in* 38 *Law Lib.*, 224; *Jones vs. Goodchild*, 3 *P. Williams*, 33; *King vs. In-*

*habitants of Hodneth,* 1 *Term Rep.,* 96, 101; *E. title Bastard,* 2 *Com. Dig.,* 344; *Helms vs. Franciscus,* 2 *Bland,* 541, 582; 2 *Kent's Com.,* 229, top, 214, *margin ;* 2 *Kent's Com.,* 230, *top,* 214, *margin ;* 1 *Jones' Eq.,* (*N. C.,*) 243 ; *Demise of Crawle, &c., vs. Bates and wife,* 6 *Blackf. Rep.,* 533 ; *Hunter vs. Whitworth,* 9 *Alabama,* 965 ; *Remington vs. Lewis,* 8 *B. Munroe,* 610.

MILLER, J., delivered the opinion of the Court.

Prudence Biggs, an illegitimate woman, who had, in 1829, acquired real estate by purchase, intermarried with David Morrison in May, 1831, and died intestate in 1853, never having had any children, leaving no brothers or sisters, or descendants of brothers or sisters, or other descendants or kindred, but leaving her husband surviving her. The sole question in the case is, did the real estate of the wife, upon her death, pass to the husband, or escheat to the State?

The right of the husband rests upon the last clause of 1st section of the Act of 1820, ch. 191, then in force. The same provision was in the Act of 1786, ch. 45, and is codified in sec. 23, Art. 47, of the Code. It is in these words:

"And if there be no descendants or kindred of the intestate as aforesaid, to take the estate, then the same shall go to the husband or wife, as the case may be, and if the husband or wife be dead, then to his or her kindred, in the like course as if such husband or wife had survived the intestate, and then had died entitled to the estate by purchase; and if the intestate has had more husbands or wives than one, and all shall die before such intestate, then the estate shall be equally divided among the kindred of the several husbands or wives, in equal degree equally."

By the terms of this clause, the husband and wife, and their respective kindred, are designated by law as parties to take, upon the death of persons lawfully married, leaving no descendants or kindred capable of taking, before the

right of the State as *ultimus hæres* can arise ; and unless it can be held either upon a fair construction of its words, or upon grounds of public policy, looking to the morals of society that this law does not embrace cases where one of the parties to the marriage is illegitimate, it must be conclusive of the case before us. Upon the language of the Statute, there is no room for doubt. It is comprehensive, and contains no exception of wives or husbands who are bastards, and die intestate, without descendants or kindred. Nor can we discover any good reason, founded upon public policy, which should lead us to adopt the more restricted construction contended for by the appellant. On the contrary, the policy of the law, as well as the dictates of justice and humanity, forbid any such construction.

The common law imposed upon a bastard a total incapacity to take as heir either to the putative father, mother, or any one else. To prevent the evils of illicit intercourse, the guilt of the parents was thus branded upon the unoffending offspring. By the Act of 1786, ch. 45, sec. 7, the subsequent marriage of the parents and acknowledgment by the father, remitted the penalty and legitimated the child to all intents and purposes, and by the Act of 1825, ch. 156, illegitimate children were endowed with inheritable privileges from the mother and *inter sese.* With these modifications, the common law still prevails in this State, but even at common law, the rule of *nullius filius* applies only to the case of *inheritances.* Bastards can acquire, hold, devise, and convey estates real and personal. They can marry and are held amenable to the penalties of the law if they marry within the prohibited degrees. Their children born in wedlock, and their descendants, inherit from them. Personal property and effects are distributed in case of intestacy to the wife, husband, children, and lineal descendants, and the widow has dower, and the husband curtesy in realty. In short, the ties of nature and all the incidents, rights, and responsibilities, arising

from marriage, hold and attach in their case as in case of other persons unaffected by the taint of illegitimacy. The law has not visited upon the husband or the wife of an illegitimate child, the offence of its parents. Its policy is to encourage marriage as it also favors the acquisition of property, and when a provision of law has clearly said the husband or wife shall have the real estate of either before it shall escheat to the State, it would be most unreasonable and unjust to hold it did not apply to husbands and wives of illegitimates who are perfectly capable of contracting marriage, and whose marriages tend as much to the promotion of good morals and the prevention of crime, as those of any other persons in the community.

No special reference was made in argument to the Act of 1780, ch. 50, sec. 5, by which it was provided that any lands within this State, of which any person has or shall hereafter die, seized in fee simple, without any heir of the whole blood who could have inherited if he had been a subject of this State, or without leaving any relation of the half blood within two degrees, that is, first cousins, as the same are reckoned by the common law, such lands shall escheat to the State, or to the similar provision in the Act of November Session, 1781, ch. 20, sec. 8, or to the Act of 1785, ch. 78, wherein lands are treated as escheatable where the person seized thereof dies intestate and without heirs of the whole or half blood. But it is to be observed, these several acts were passed prior to that of 1786, ch. 45, abolishing the law of descents which originated with the feudal system and military tenures, establishing a new system and containing the clause we have considered, which was continued by the Act of 1820, ch. 191. Anything, therefore, in these laws, inconsistent with the provisions of subsequent legislation was clearly repealed thereby, and can have no effect in determining the question now presented.

But we have been referred to the Act of 1831, ch. 23, as

a binding legislative construction of the law adverse to the claim of the husband. That was a special Act granting to a widow all the right and interest of the State in certain land of which her husband died seized and possessed, leaving no heirs of the whole or half blood. It does not appear that either party was illegitimate, but it was stated in argument that the husband was a bastard. Assuming this to be true the most that can be said of this law is that which appears on the face of its preamble, viz.: that in such case the land was " *supposed by some to have become escheated to the State.*" But such special Acts where parties choose to ask the aid of the Legislature in favor of rights considered doubtful, can never be regarded by the Courts as binding and authoritative expositions of the provisions of existing general laws.

The order sustaining the caveat of the appellee is affirmed.

*Order affirmed.*

(Decided 25th June, 1869.)