ANN ELIZA BRIGGS *vs.* POLLY GREENE.
SAME *vs.* SAME.

Under the statute of descents, Rev Stat. chap. 159, bastard children of the same mother are capable of transmitting inheritance on the part of their mother; and when a bastard dies intestate, leaving a bastard sister by the same mother, her estate will pass to that sister.

THESE were two bills in equity to set aside two conveyances as fraudulently obtained. The causes were heard upon the complainant's exceptions to the answers of the respondent. The bills severally alleged that conveyances of two estates in East Greenwich, R. I., had been fraudulently obtained by the respondent from one Job Manchester and Susannah Manchester his wife. The complainant claimed the estates as sister and heir at law of the said Susannah Manchester. The respondent, in her answer, while she denied the alleged fraud, set up, claiming it to be a complete answer to the relief sought by the complainant, the alleged fact that the complainant and the said Susannah Manchester were both illegitimate children of the same mother, and hence' could not inherit from each other. To this portion of the answers the complainant excepted.

*Payne & Congdon,* for the complainant, in support of the exceptions, contended: I. That the respondent was not in a position to avail herself of this defence, inasmuch as the court will not, for the benefit of a wrong-doer, withhold the exercise of its equity powers by deciding beforehand, and in this summary way, upon the right of the complainant, citing Story's Eq. Pl. § 573.

II. That the natural construction of the words of the statute of descents, Rev. Stat. chap. 159, § 7, would imply that a woman's illegitimate offspring are legal heirs of each other as fully as her legitimate children would be; and that this construction was favored by the general current of the later decisions, citing *Garland* v. *Harrison,* 8 Leigh, 368; *Hepburn* v. *Dundas,* 13 Grat. 219; *Bennett* v. *Tiler,* 15 Grat. 588; *Brown* v. *Dye,* 2 Root, 280; *Heath* v. *White,* 5 Conn. 228; *Lewis* v. *Ellsler,* 4 Ohio, 354; *Burlington* v. *Fosby,* 6 Vt. 83; *Riley* v. *Byrd,* 3 Head, 20; *Cormick* v. *Cartrell,* 7 Yerg. 615; *Ellis* v. *Hatfield,* 20 Ind. 101.

*Metcalf,* for the respondent, contended : I. That in the absence of any reported adjudication in this state the decisions of courts in other states where the law is identically the same would have great weight with the court, where they have put a construction upon this language which would defeat the complainant's claim, citing 4 Kent's Com. 413, 417; *Stevenson* v. *Sullivan,* 5 Wheat. 260; *Remington* v. *Lewis,* 8 B. Mon. 606; *Little* v. *Lake,* 8 Ohio, 289; *Bent* v. *St. Vrain,* 30 Misso. 268.

Briggs v. Greene.

II. That the reasoning of other courts construing similar statutes confirms the decisions above cited, citing *Gibbs's Appeal*, 58 Pa. State, 55; *Allan* v. *Ramsey*, 1 Met. (Ky.) 635; *Woodward* v. *Duncan*, 1 Cold. 562; *Curtis* v. *Hewins*, 11 Met. 294.

III. That the result of these cases was to limit the capacity given by the statute in question " to inherit or transmit inheritance " to the direct line ascending or descending, and the complainant's exceptions should therefore be overruled.

BRAYTON, C. J. The facts upon which the question of law now argued is raised are, that one Susannah Manchester, an illegitimate daughter, became the owner of certain real estate which she in her lifetime conveyed to the defendant, and afterwards, and after the death of her mother, died intestate and without issue. The plaintiff, an illegitimate daughter of the same mother, by this bill claims the estate as heir to the said Susannah, and prays that the deed to the defendant may be set aside as fraudulently obtained.

The question is, if the said Eliza is entitled to claim as such heir, were the deed declared void. Can she inherit as to the said Susannah? By the common law, illegitimate children could not take by descent, because in contemplation of law they had no inheritable blood, and, for the same reason, an inheritance could not be transmitted from them collaterally. In contemplation of law, a bastard had no kindred except his lineal descendants proceeding from him as from a new stock. He was, as the expression of the common law is, *nullius filius*, was of no family. He had no father, no mother, and so no kindred. His mother who bore him was not of his kindred, though her blood ran in his veins. By the common law the inheritance passed to the next of kin of the intestate, to be ascertained according to the rules of the canon law. But he had no kindred by those rules, and could be next of kin to nobody.

Our statute of descents provides, that the estate of an intestate shall descend and pass in equal proportions to his kindred in the following course : *First*. To his children or their descendants, if any there be. If there be none, then *secondly*, to the father. If there be no father, then *thirdly*, to the mother, brothers, and sisters, and their descendants, or such of them as there be. These degrees of kindred differ from the course prescribed by the canon

or common law, and from the rules of the civil law. Still the inheritance passes only to kindred in, either case. As the bastard had no blood which could give him kindred in any degree as ascertained by the common law or by the statute, he was equally incapable of inheriting by any of those rules. Neither was he capable of transmitting inheritance; kindred only were capable of transmitting it. This he wanted, and for want of it the current of descent was obstructed and stopped on reaching him, and there was none to flow from him to carry the inheritance. It could not be made to flow until the blood in his veins was made capable of giving him kindred. To remove the disability, and to enable him to inherit and to transmit inheritance collaterally, which he could do lineally to his descendants, the only kin which he had, the seventh section of the statute provides in these words: " Bastards shall be capable of inheriting or transmitting inheritance, on the part of their mother, in like manner as if they had been lawfully begotten of such mother." They shall inherit as the same mother's legitimate children might. The illegitimate are put upon the same footing as the legitimate for the purpose of inheritance, and for this purpose are legitimate. They have then all the same kindred as her legitimate children have, and when those born in lawful wedlock take by descent according to degrees prescribed by the statute, the others take also. The kindred of both is to be traced by the same blood, the blood of the mother, which is now by the statute theirs also. A bastard still can inherit only as he has the blood of his mother. His kindred kinship can be traced only by it. He has no other blood, none of the father. Had the words, " on the part of their mother," been omitted from this section, the construction must still be the same, for he has no kindred except on the part of the mother. The whole course of descent to and from him is thus on her part.

The second section of the statute provides, that if there shall be no mother, nor brother, nor sister of the intestate, nor their descendants, the. inheritance shall go in equal moieties to the paternal and maternal kindred, each in the following course. And by section four it is provided, that where thereinbefore the inheritance is directed to go by moieties to the paternal and maternal kindred, if there be no such kindred on the one part, the whole shall go to the other part. Maternal kindred are

kindred on the part of the mother, kindred by the blood of the mother, and the provision is that the inheritance shall descend on that part as long as such kindred remain, and every degree is capable of inheriting and transmitting inheritance on that part. If there be no descendants of the intestate, and there be no kindred on the part of the father, nor on the part of the mother, the inheritance still, by section four, shall not escheat if the intestate have a wife or husband; nor even then, when there is no husband or wife surviving, but the estate shall still go to the kindred of such husband or wife, as if he or she had survived the intestate and then died entitled to the estate. So carefully have the legislature provided against escheats.

Section sixth provides for ancestral estates, and that such estates shall go to the kin next to the intestate of the blood of the person from whom the estate came or descended, if any there be. Such an estate coming from the mother by gift, if the bastard have no children, and it be held that he can have no collateral relations, must go out of the blood which he has, and to those who have neither his blood nor the blood of the mother, from whom the estate came. This would be against the spirit of this act, and could only stand upon the letter of it, if it stand at all.

It is claimed that the plaintiff in this case cannot take by descent from the intestate, because they are not sisters, and the descent is not through the mother, but is direct from sister to sister. The act does not expressly declare them to be sisters, but does it not impliedly? Were we to ask for the definition of sisters, the answer would be but the statement of the relation in which these two persons are by this act made to stand to the mother, illegitimate daughters of the same mother. Such can be no other than sisters. They are so held by the Supreme Court of Vermont, under a similar statute of that state. The Supreme Court of Virginia, in *Garland* v. *Harrison*, 8 Leigh, 368 have also held upon the same language, in the statute of descents of that state, that they are sisters, overruling the case of *Stevenson's Heirs* v. *Sullivant*, 5 Wheat. 207, cited by the respondent, which was decided by the Supreme Court of the United States upon the same words in the same statute, in which they hold that bastards do not stand related as brother and sister, and could not inherit to each other.

By section five it is provided, that "the descendants of any person deceased shall inherit the estate which such person would have inherited, had such person survived the intestate." Were the objection to prevail that the plaintiff in this case is not the sister of the intestate and could not inherit as such, still she would be entitled to take the estate which her mother would have taken had she survived the intestate. Were there no sister, the mother would have taken the whole estate of the intestate, and upon the mother's death it must have descended upon this daughter, the plaintiff, who is expressly made capable of inheriting as the legitimate descendant of such mother might.

If it be held that the plaintiff in this case cannot inherit the estate because she is not next of kin, then the mother being dead and there being no paternal kindred, either by the common law or by this statute, there is no kindred on the part of the mother, or on the part of the father, and the estate must go by section four in such case to the husband of the intestate, and in case of his death also, to his next of kin, as if he had survived the intestate and then died seised. We think the statute intended no such result. It had provided a course of descent extending through all the kindred of the intestate to the last survivor of those in whose veins ran his blood; and in view of the fact that the relative of a child born out of lawful wedlock, though it were a relative by blood, was not a legitimate relative, and so was an obstruction to the course of descent, provided that relative was incapable of transmitting the estate, the intent was to remove this obstruction by making such children capable, thereby making the course of descent, while imperfect, so far as the mother's blood created the relationship, such as to make them for the purposes of this act legitimate children of their mother, capable like all other children of receiving and transmitting an inheritance.

*Exceptions sustained.*