## JAMES A. BARRON and LOUISA BARRON *vs.* MONROE ZIMMERMAN et als.

*Inheritance and descent laws: illegitimate children; equity: jurisdiction; demurrer; Code of 1888, effect of.*

Under the common law an illegitimate child was devoid of capacity to inherit. p. 298

And legislation modifying the common law disqualifications of illegitimate children are strictly construed. p. 302

Under sec. 133 of Art. 93 of the Code, illegitimate children, their issue or descendants, inherit real or personal estate of their mother, or from each other, in like manner as though legitimate. p. 298

Under sec. 30 of Art. 46 of the Code, when illegitimate children leave no descendants, nor any brothers or sisters or descendants of such, the mother inherits, or if she be dead, then

her heirs at law inherit the real and personal property of her illegitimate children, in like manner as if they had been legitimate.                                                    p. 299

Under these descent laws a mother's legitimate and illegitimate children stand upon the same footing, as regards her estate, in all respects and to every intent.                          p. 300

Under sec. 27 of Art. 46 of the Code, if, in the descending or collateral line, any father or mother be dead, the child or children shall by representation be considered in the same degree as the father or mother, and shall have the same share of the estate as the father or mother would have taken. Under sec. 127 of Art. 93, the children of a brother or sister of an intestate stand in the place of such brother or sister in the distribution of personal property.                       p. 299

The Code of 1888 was adopted in lieu of all public general laws of the State then in effect, and its provisions dealing with the same subject matter must be construed together in order to ascertain the legislative intent.                        p. 301

An illegitimate child is the "child" of its mother within the meaning of section 27 of Article 46 of the Code; and, under section 127 of Article 93, can succeed to an estate that the mother would have inherited if she had survived.          p. 300

A bill for sale and partition (under section 129 of Article 16 of the Code) of the real estate of an intestate decedent was filed by one who was shown to be the illegitimate child of her sister. It was *held*, that the bill was not demurrable, and that the Court's jurisdiction was not divested merely because the answer and proof deny the plaintiff's legitimacy.          p. 305

The test of the jurisdiction of a Court of equity is whether a demurrer would lie to the bill.                                   p. 305

*Decided January 11th, 1912.*

Appeal from the Circuit Court for Washington County, sitting in equity (KEEDY, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Albert J. Long,* for the appellants.

*H. F. Wingert* (with whom 'was *Miller Wingert* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The principal inquiry upon this appeal is whether, under the laws of this State, an illigitimate child is capable of inheriting from his deceased mother's sister. This question arises in a proceeding for the sale of real estate for the purposes of partition under section 129 of Article 16 of the Code. The property was owned by Elizabeth R. Bitner in her lifetime; and after her death, intestate and without issue, the appellant filed the present bill alleging that he is one of her heirs at law, as the son of her deceased sister, Mary Zimmerman, and that the land sought to be sold descended to himself and the defendant heirs as tenants in common. It does not appear affirmatively upon the face of the bill that the plaintiff is illegitimate, but this fact is averred in the answer and is shown by the evidence without dispute.

It is clear that the plaintiff's right as an heir at law in this case could not exist independently of statute, as at common law an illegitimate child is devoid of any capacity for inheritance. *Miller* v. *Stewart,* 8 Gill, 130; *Southgate* v. *Annan,* 31 Md. 116.

The existing statutory provisions dealing specifically with the subject of inheritance by and from illegitimates are found in section 30 of Article 46 of the Code, title "Inheritance," sub-title "Descents," and in section 133 of Article 93, title "Testamentary Law," sub-title "Distribution." The latter section is a reproduction of Chapter 156 of the Acts of 1825 and provides that: "The illegitimate child or children of any female, and the issue of any such illegitimate child or children, shall be capable to take real or personal estate from their mother, or from each other, or from the

descendants of each other, in like manner as if born in lawful wedlock."

The section first mentioned is a codification of the Act of 1825 as amended by Chapter 199 of the Acts of 1868 and includes the provision just quoted with additional clauses, as follows: * * * "And where such illegitimate child or children shall die, leaving no descendants, or brothers or sisters, or the descendants of such brothers and sisters, then and in that case, the mother of such illegitimate child or children, if living, shall inherit both real and personal estate from such illegitimate child or children; and if the mother be dead, then and in that case, the heirs at law of the mother shall inherit the real and personal estate of such illegitimate child or children in like manner as if such illegitimate child or children had been born in lawful wedlock."

By virtue of these statutes the plaintiff was as fully capable of inheriting from his mother as if he were legitimate; and his mother's sister, if she had survived, would have had an undoubted right to inherit from him upon his decease. There is no provision however, among those we have thus far quoted, which expressly enables an illegitimate to take by descent or distribution the property of a brother or sister of his deceased mother. But with respect to the descent of real estate, it is provided by section 27 of Article 46 of the Code, under the same sub-title as section 30 previously mentioned, that: "If in the descending or collateral line, any father or mother shall be dead, the child or children of such father or mother shall by representation be considered in the same degree as the father or mother would have been if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled to, and no more." In reference to the distribution of personal property it is provided by section 127 of Article 93 that "the child or children of a brother or sister of the intestate shall stand in the place of such brother or sister."

The appellant contends that notwithstanding his illegitimacy he is entitled to a place in the line of inheritance as

the representative and child of his deceased mother within the spirit and intent of section 27 just quoted when interpreted in the light of the other provisions of the Code which accord him the right to inherit from his mother as if he had been born in lawful wedlock.

The decisive question thus presented is not whether the appellant would be so entitled merely by force of the section making him capable of inheriting direct from his mother, or whether the term "child" as ordinarily used in a statute would include an illegitimate, but whether, under a codified system of laws by which such a person is invested with the full qualifications of legitimacy with reference to the inheritance of his mother's estate, he is within the purview of a constitutent provision that the estate which the deceased mother would have inherited shall pass to her "child or children." In our judgment this question should be answered in the affirmative. It would certainly seem to be a reasonable construction of statutory provisions which are codified together as parts of the same general plan of descent and distribution to hold that one who is placed in the position of a lawful begotten child for the purpose of inheriting from his mother should be regarded as a "child" of the mother, within the intent of the law, for the purpose of succeeding to the estate which she would have inherited if she had survived.

It has been decided that so far as the inheritance of the mother's estate is concerned her children all stand upon an equal footing without regard to their legitimacy. *Earl* v. *Dawes,* 3 Md. Ch. 231. In the case just cited the Chancellor observed that by the statute illegitimates are placed, as regards their mother's estate, "in the condition of legitimate children in all respects and to every intent." But if we were to deny the right here asserted by the appellant, it would have to be upon the ground that although he is treated by the "Inheritance" article of the Code as if he were a legitimate child of his mother for the purpose of being her heir at law, he is to be refused recognition as her "child" under

the same article for the purpose of representing her in the course of descent.

If the several sections to which we have referred had been included in the same original enactment, it would probably not be seriously contended that an illegitimate child who was made capable by the statute of inheriting from his mother should not be regarded as her "child", under that unqualified description in the act, with a view to participation in the estate which she would have inherited had she lived.  But section 20 of Article 46 formed part of the Acts of 1820, Chapter 191, and at the time of the passage of that statute the only existing provision in reference to illegitimates was one enacted in 1786, and incorporated in the Act of 1820, to the effect that if any man should have a child or children by any woman whom he afterwards married, such child or children, if acknowledged by the man, should, by virtue of the marriage and acknowledgment, be legitimated and capable in law to inherit and transmit inheritance as if born in wedlock. Code, Art. 46, sec. 29. When the Act of 1820 first became effective it obviously did not intend that illegitimates generally should be included in the category of "children" capable of inheriting in the place of the deceased mother because this class of persons at that time still remained under their common law disability as to inheritance except upon the single contingency stated; and if that act had never been codified with those of 1825 and 1868 as co-ordinate provisions of the same system of descents, the contention of the appellees might have greater force.   The Code of 1888, however, in which these statutes were all incorporated, was adopted in lieu of all public general laws of the State then in effect, and its provisions dealing with the same subject matter must be construed together in order to ascertain the legislative intent.  *Reese* v. *Starner,* 106 Md. 53; *State* v. *Popp,* 45 Md. 433; *McCracken* v. *State,* 71 Md. 150; *Trustees of College* v. *McKinstry,* 75 Md. 188.

In *Reese* v. *Starner, supra,* the widow of an illegitimate, who died intestate without issue and without leaving broth-

ers or sisters or the descendants of brothers or sisters, was claiming the whole of her husband's estate as against the claim of his mother to one-half. The widow based her contention upon what she regarded as the proper construction of section 119 of Article 93 of the Code, which provides that: "If the intestate leave a surviving husband or widow, as the case may be, and no child, parent, grandchild, brother or sister, or the child of a brother or sister of the said intestate, the said surviving husband or widow, as the case may be, shall be entitled to the whole." The argument was that the mother of an illegitimate child could not be considered a "parent" within the meaning of this section because at the time of its original enactment in 1798 the mother of an illegitimate could not inherit his property. But it was held that the subsequent codification of the statute with the Act of 1868, which enabled the mother to inherit from her illegitimate offspring, superseded the pre-existing law on the subject, and that as both the provisions referred to are concerned with the devolution of title to the estates of decedents, they should be construed together even though they are contained in separate articles. The conclusion was accordingly reached that a mother, qualified under section 30 of Article 46 to inherit from her illegitimate child, was to be regarded as his "parent" under section 119 of Article 93. Upon the same principle we must hold that one who, being a child in fact, is made a child in law with respect to inheritance from his mother, cannot be denied recognition as her "child" under section 27 for the purpose of inheriting property to which she, if she had survived, would have been entitled. This interpretation of the law does not disregard, but is consistent with the rule, applied by this Court in an early case, that legislation modifying the common law disqualifications of illegitimate children should be strictly construed. *Miller* v. *Stewart, Supra.*

Numerous decisions in other jurisdictions have been cited, but the only one which appears to deal with statutory conditions analogous to the present is that of *Dennis* v. *Dennis*

(Tenn.), 58 S. W. 284. There were two separate Code provisions considered in that case; one of which was that if an intestate die without issue, his land shall be inherited by his brothers and sisters, and if any such brother or sister die in the intestate's lifetime "leaving issue," such issue shall represent their deceased parent, and the other of which was that where a woman dies intestate leaving a natural born child, he shall take her estate by the general rules of descent and distribution equally with her other children. These provisions were construed together, and it was held that an illegitimate child of a mother who predeceased her sister, who died intestate without issue, takes the share of the estate of his mother's sister which his mother would have taken had she survived.

The appellee questions the jurisdiction of a Court of equity to entertain the present proceeding upon the ground that a Court of law is the proper tribunal in which to have a question of title determined. This objection is based upon certain language used in the opinion of this Court in the case of *Savary* v. *Da Camara,* 60 Md. 139. It was there said: "A bill for partition cannot be made to serve as an action of ejectment, and is not designed to settle adverse rights, but only to subserve the convenience of those whose interests in the subject matter are concerned. * * * The object of the bill is to secure a sale for the benefit of those assumed to be the owners of the property; and the defendants who are, or ought to be, those conceded to have a common or concurrent interest are really summoned, not to litigate a denial of their title, but, as jointly interested, to be heard upon the prayer of the bill to sell, instead of divide, the property, as being the most advantageous to all concerned." These expressions were employed in the course of an opinion disposing of a demurrer to a bill of review. The decree which the bill sought to have reviewed had been passed in a proceeding instituted for the sale of the real estate of a decedent by persons claiming to be his heirs at law on the maternal side and alleging that he left no known heirs on the

part of his father. An order of publication, however, was prayed for and issued against the "unknown heirs" on the paternal side. The property was subsequently decreed to be sold; and while the proceeds were awaiting distribution the bill of review referred to was filed by parties who claimed to be heirs of the decedent on the part of his father and who alleged their previous ignorance of the partition proceeding and of their interest in the estate. They prayed that the proceedings be reopened and that an opportunity be given them to prove their relationship. In this state of the case the sole question considered upon the demurrer to the bill of review was whether the plaintiffs in that bill, conceding them to be heirs of the decedent in the paternal line and hence entitled in the first instance to his property, were not concluded by the decree of sale, the order of publication and the evidence adduced in the partition suit. It was held that they were not so concluded because the maternal heirs, having no interest where there were paternal heirs in existence, as the demurrer admitted, had no more right to maintain a suit for the sale of the property than absolute strangers, and because the order of publication, having been directed against a class of persons who would have a title paramount to, and not concurrent with that claimed by the plaintiff in the proceeding, could not support the jurisdiction of the Court for the purpose contemplated. The effect of the decision was that the Court was not authorized to entertain a bill for partition filed by those claiming as heirs in the maternal line against those who would be entitled, if at all, as heirs on the part of the father, because upon the face of such a bill the want of jurisdiction is apparent.

In the case before us no such difficulty exists. The allegations of the bill disclose no ground upon which the jurisdiction of the Court can be questioned. The interest which the plaintiff claims is not superior to, but is in common with the interests which he concedes to the defendants. He has filed his bill in strict conformity to the Code provision that the

Court may decree a partition or sale of lands upon the bill or petition of any concurrent owner. Article 16, section 129.

In such suits as the present the test of the Court's jurisdiction is whether a demurrer would lie to the bill. *Scarlett* v. *Robinson,* 112 Md. 207; *Hamilton* v. *Traber,* 78 Md. 28; *Johnson* v. *Hoover,* 75 Md. 486; *Slingluff* v. *Stanley,* 66 Md. 225. It is evident here that the bill is not demurrable, and we see no reason to hold that the Court should be divested of the jurisdiction it has acquired merely because the answer and the proof deny the plaintiff's legitimacy. If such a denial were sufficient to oust the Court of the jurisdiction which the bill has conferred, the same result would be produced whether the objection were well founded or fictitious, and a Court of equity could proceed in no case of this character where the plaintiff's rights are disputed by any of the defendants. As the present bill contains all the essential jurisdictional averments, and as the issue raised in the answer as to the plaintiff's legitimacy was relevant to the subject-matter to which the jurisdiction of the Court below had attached, we think the Court was fully authorized to hear and determine the question. Its conclusions, however, differ from those we have stated, and the decree will, therefore, be reversed and the cause remanded for further proceedings.

*Decree reversed, with costs and cause remanded.*