MARTIN B. BURRIS, Administrator of the Estate of Joshua Blackson, deceased,

<em>vs.</em>

RACHEL BURGETT, MARY MARTIN, ANDREW COLLINS, CLARA COLLINS, OSCAR COLLINS, CORA HENRY, MAY BETTS, BENJAMIN F. BLACKSON, HELEN BLACKSON and SUSAN BLACKSON.

<em>New Castle, Nov. 16, 1927.</em>

*Martin B. Burris*, for complainant.

*James R. Morford*, of the firm of Marvel, Layton & Morford, for lawful children of Rachel Blackson.

THE CHANCELLOR. If the illegitimate children of the intestate's daughter, who predeceased him, are entitled to the residue as distributees under the statutes of this State to any extent, they are entitled to all of it, and the collateral kin, the nephews and nieces, are entitled to none.

At common law a bastard was ''treated as *nullius filius*, and as such incapable of inheriting from either the putative father or the mother, and without heirs, excepting those of his own body." 7 *C. J.* 959. This rule was taken over as a part of the body of common law prevailing in this jurisdiction and is recognized by our statutes governing generally the law of descent and distribution in the use of the word "lawful" as a modifier of "issue" whenever the same is spoken of.

The rigor of the rule which has often been spoken of as a harsh · one, was first mitigated in this State by allowing the mother of an illegitimate child, in the absence of lawful issue, to inherit both its real and personal property in case of intestacy. *Section* 3087, *Revised Code* 1915.

Another mitigation of the rule was adopted in 1917 (29 *Del. Laws*, c. 229), when the Legislature amended said *Section* 3087 by adding thereto a provision regulating descent from the mother of illegitimate persons. That provision is as follows:

"When the mother of an illegitimate-born child dies intestate, her property, real and personal, if any there be, shall pass and belong in equal shares to such illegitimate-born child or children, and to the lawful issue of such who may have died, by right of representation.

"If there be no such issue, then said property shall go to the heirs at law of such deceased mother, subject always to the payment of her just debts and all lawful demands against her estate."

At the next session of the Legislature in 1919 (30 *Del. Laws*, c. 200) the enactment of 1917 was repealed and in lieu thereof the following was substituted:

"When the mother of an illegitimate child or children dies intestate, such illegitimate child or children, or the issue of such who may be dead, shall share in her real and personal estate, in the same manner as legitimate children or their issue."

It is this act of 1919 to which the illegitimate children of the intestate's deceased daughter must look for any rights they may have to receive the residue now held for distribution by the complainant. The act is one in derogation of the common law. As a general rule such acts are to be construed strictly. *Garrett & Smyth v. Bailey*, 4 *Har.* 197; *Plotkin v. Plotkin, et al.*, 2 *W. W. Harr.* 455, 125 *A.* 445. The act in question, however, is also a remedial one, and being such the doctrine of strict construction applicable to statutes in derogation of the common law is not so rigidly applied by the courts. *Valentine v. Tantum*, 7 *Houst.* 402, 32 *A.* 531. But indulgence in favor of a relaxation in applying the doctrine of strict construction to remedial statutes in derogation of the common law, should never go so far as to oust the language of the statute from its connection or give to it an imaginary meaning so as to make it subserve the ends of free interpretation, as said by the court in *Valentine v. Tantum, supra*, or, as said by the court in *Forbes v. Thompson*, 2 *Pennewill*, 530, 47 *A.* 1015, so as to alter the common law any further than is necessary to remove the mischief legislated against.

The principles of construction thus laid down by the courts in this State are I believe accepted likewise in all American jurisdictions. With these principles in mind, what is the meaning of the statute in question when applied to the situation of the illegitimate children of the deceased daughter of this intestate? The statute of 1919 is perfectly plain in its language. It admits the illegitimate children of a mother dying intestate to a share in "*her* property, real and personal." At common law the right of inheritance of such children could not ascend even so far as to the mother, not to speak of ancestors farther removed in the ascending line. The statute in question, however, altered this rule to the extent of creating a right of inheritance in illegitimate offspring to the extent of embracing property of the mother. That is as far as it goes. Beyond that the common law rule of recognizing no rights of inheritance prevails. And so, if the mother of these illegitimate children had no property in this fund, they are barred from receiving it. That the fund in question was not hers admits of no doubt, for she predeceased the intestate. The property was the property not of the mother therefore, but of her father, the natural grandparent of the illegitimates. The statute not making illegitimates the heirs or distributees of any property except that of the mother, the illegitimate children of the daughter of Joshua Blackson who predeceased him are not entitled to the fund.

No case has arisen in this State where the point here involved has been decided. In other jurisdictions, however, under statutes similar to ours, and in some of them under statutes less rigid in their phraseology than ours, the point has been decided in harmony with the conclusion reached above. Notwithstanding the attitude of a liberality of construction which courts display towards remedial statutes, none of them, so far as I can find, has in dealing with statutes similar to the one we are here discussing, extended language applicable in terms to a mother's property to property of her ancestor which, had she lived, might some day have become hers. Cases in other jurisdictions bearing on the point are: *Voorhees v. Sharp*, 63 *N. J. Eq.* 216, 49 *A.* 722; *In re Mericlo*, 63 *How. Prac.* 62; *Holmes v. Adams*, 110 *Me.* 167, 85 *A.* 492; *Foster v. Lee*, 172 *Ala.* 32, 55 *So.* 125, *Ann. Cas.* 1913C, 1335; *Jackson v. Jackson*, 78 *Ky.* 390, 39 *Am. Rep.* 246.

Some argument was advanced to the effect that the difference in phraseology which is found in the act of 1919 as compared with the act of 1917 for which it was a substitute, shows an intention on the part of the Legislature to give illegitimate children a general status in the law exactly similar to lawful issue, and if such was the intention illegitimates, so far as inheritance is concerned, have been fully and completely legitimatized. To accept this argument is to overlook entirely the word "her" in the phrase "her real and personal property," meaning of course the mother's. In so far as the mother's property is concerned, the statute for purposes of descent and distribution has undoubtedly legitimatized her natural issue. Thus the legitimation of such issue is only partial. It is not general so as to extend to the property of remoter ancestors in the line or of collaterals. The purpose of the substituted statute of 1919 seems to be plain. It was, I judge, principally to correct a plainly unwise use of language in the 1917 act. It is to be observed that a literal reading of the 1917 act gives to illegitimate children all the mother's property to the exclusion of even lawful children, if any there be. This was an absurdity. The 1919 substituted enactment corrects that indefensible situation. I can see nothing in the change of language beyond a desire to correct careless phraseology and to condense the law in as brief a statement as possible.

Nothing therefore is to be found in either the wording of the statute or in its history to indicate that the legislative intent extended any farther than to alter the common law by admitting illegitimate children, or their issue, to participate in the inheritance or distribution of only the mother's property. The illegitimate issue of the intestate's child who predeceased him are therefore not entitled to the fund in hand for distribution.

The persons entitled to receive the fund are the lawful children of the deceased sister of the intestate. The illegitimate child of a deceased niece who died before the intestate, cannot be admitted in right of her mother to share in the fund with her natural uncles and aunts for reasons similar to those which exclude the illegitimate children of the deceased daughter.

Let a decree be prepared accordingly.