119 A.2d 748 (1956)
Matter of the ESTATE of James Russell KLINGAMAN, Deceased.
Court of Chancery of Delaware, New Castle.
January 12, 1956.
Clement C. Wood, Wilmington, for petitioner, Foster E. Klingaman.
George Tyler Coulson, Wilmington, for administratrix of estate of James Russell Klingaman.
MARVEL, Vice Chancellor.
James Russell Klingaman died intestate in New Castle County on April 2, 1952, and in June of that year his illegitimate half sister was appointed administratrix of his estate. Mr. Klingaman never married and left no issue. After the payment of debts and administrative expenses there remains in the hands of the administratrix a personal estate of $15,749.47 to be disposed of under the Delaware rules governing the distribution of intestate property. The decedent left no real property. The administratrix claims the entire personal estate as half-sister of the decedent there having been no other brothers or sisters of the whole or half blood and the common mother having predeceased decedent.
Foster E. Klingaman, a cousin of the decedent, has petitioned this Court for a decree of distribution under § 2332 of Title 12 Del.C. By sworn complaint petitioner also sought and obtained injunctive relief against removal of funds by the administratrix from the Equitable Security Trust Company pending decision as to the course or order of distribution of the intestate's personal estate. The restraining order entered by the Chancellor on March 4, 1955, not only enjoined Equitable Security Trust Company from paying *749 over estate funds to decedent's[1] illegitimate half-sister, the administratrix, but took jurisdiction of the petition for distribution. Although § 2332 of Title 12 Del.C. directs that such a petition for distribution be filed in the Orphans Court, this Court has concurrent jurisdiction to grant the relief prayed for, Glanding v. Industrial Trust Co., 28 Del.Ch. 499, 45 A.2d 553.
The question thus presented is this: does an illegitimate half-sister of a decedent take under the Delaware statutes regulating the distribution of intestate personal property to the exclusion of legitimate cousins of the decedent? The cousins are entitled to the estate only in the event that the administratrix does not legally qualify as a sister[2] "of the half blood".
There is no doubt but that an illegitimate child shares in the real and personal estate of his or her deceased mother. This is provided by statute.[3] It is equally clear that any person "legitimated solely by an acknowledgment of paternity * * *" in accordance with § 1301 of Title 13 Del.C. does not inherit from his father under the inheritance laws of Delaware, § 1304, Title 13 Del.C.
The administratrix first contends that § 1302 of Title 13 Del.C. which provides for the passing of the estate of an illegitimate to his mother, if living, and in case of her death, to her heirs, and § 1303 of the same Title, referred to earlier, disclose a legislative intent to remove for the limited purposes of inheriting and transmitting intestate property the stigma of illegitimacy from persons related through a common mother. The administratrix then argues that by construing these statutes in pari materia with the[4] general statute governing descent and distribution the Court is compelled to designate decedent's half-sister as the person entitled by law to take the Klingaman estate.
In Burris v. Burgett, 16 Del.Ch. 10, 139 A. 454, the question for decision was whether illegitimate children of the intestate's daughter (who predeceased the intestate) were entitled to take the residue of the estate to the exclusion of collateral kin. In construing present § 1303 of Title 13 Del.C., the Chancellor held that while the statute had altered the common law doctrine that bastards were incapable of inheriting to the extent of allowing them to share in their mother's property, "real and personal", it went no further. The Court pointed out that the mother had predeceased her father, the intestate, and the property in question not being hers, her illegitimate children had no right in what was in fact their grandfather's estate.
In Magee v. Chambers, 17 Del.Ch. 45, 147 A. 306, the Chancellor dealt with claims of relatives against the estate of an illegitimate who left Federal War Risk insurance moneys to be disposed of under the intestate law of Delaware. The claimants of the intestate's estate were as follows: an illegitimate half sister, a step father, the administratrix of the estate of the intestate's maternal aunt and a brother of the intestate's mother. The Chancellor construed present § 1303 Title 13 Del.C. governing the distribution of the estate of an illegitimate dying without *750 lawful issue in its original 1917 form and as amended in 1919 together with the provisions of present § 1302, Title 13 Del.C. in determining the "heirs" of the intestate's mother (she having predeceased her illegitimate son) and concluded first that the illegitimate intestate having survived his mother, the "heirs" of the mother should be determined as of October 12, 1918, the date of the death of her illegitimate son. Interpreting "heirs" to mean the persons appointed by law to succeed to another's estate in the absence of a will, the Chancellor concluded that the intestate's illegitimate half sister was the only person recognized by law as the "heir" of the intestate's mother at the time of his death and directed payment of the fund to her.
In the case at bar, however, the question presented is the right of an illegitimate to take the estate of her legitimate half brother and neither of the statutes, hereinabove discussed, are in my opinion applicable. In the case of Stevenson's Heirs v. Sullivant, 5 Wheat. 207, 5 L.Ed. 70, the Supreme Court ruled that bastard brothers and sisters of a deceased legitimate were not his heirs at law, even though there was a common mother. A Virginia statute of 1785, regulating the course of descents, provided in § 18: "* * * Bastards also shall be capable of inheriting and transmitting inheritance, on the part of the mother, in like manner as if lawfully begotten of such mother." [1 Rev.Code, c. 96, p. 357.]
The Court construing the statute concluded that inasmuch as the estate of the legitimate decedent never vested in his mother, the bastard children could not take inasmuch as they remained subject to all the impediments of bastardy other than that of transmitting inheritable blood in the descending line and of inheriting in the ascending line through the mother.
The Court of Appeals of Virginia declined to accept the interpretation placed on the Virginia statute by the Supreme Court of the United States and concluded in Garland v. Harrison, 35 Va. 368, 8 Leigh 368, that the language of the statute in question was designed to make the distinction between the blood of an unknown father and that of a known mother, but was not intended to draw a line of separation between a bastard and his legitimate uterine brothers and other maternal kin.
The language of the Virginia statute, which is broader than that of the Delaware statute, plus an evident desire to avoid possible escheat to the state under the intestate law then in force led to the conclusion reached by the Virginia court in the cited case and followed in later cases. Similarly in other jurisdictions courts have been able to exhibit greater liberality towards an intestate's near but illegitimate maternal relatives because of the existence of statutes (governing the right of illegitimates to transmit and inherit intestate property) more akin to and often more explicit than the cited Virginia statute. See Dennis v. Dennis, 105 Tenn. 86, 58 S.W. 284, Barron v. Zimmerman, 117 Md. 296, 83 A. 258, Morrow v. Morrow, 289 Ill. 135, 124 N.E. 386, 24 A.L.R. 561; and annotations at 24 A.L.R. at page 582 and 83 A.L.R. at page 1334.
In Delaware the framework of the statutory provisions controlling the interests of illegitimates in the estates of their intestate kin is too rigid to permit payment in the case at bar to the person most closely related by blood to the decedent.
The general rules of distribution set forth in § 512, Title 12 Del.C. cannot be interpreted so as to place an illegitimate on the same plane as a legitimate of the half-blood except in those special situations referred to above involving the death of an illegitimate intestate without lawful issue or where the mother of an illegitimate dies intestate seised of an estate.
To give to the general rules of distribution the meaning urged by the attorney for the administratrix and to hold that an illegitimate half sister of an intestate is on an equal plane with legitimates of the *751 same womb is to go beyond the limits of the statutory privileges granted in Delaware to illegitimates to date as to the transmitting and inheriting of intestate property.
While it is an anomalous statutory situation which permits a legitimate to take intestate property of his bastard brother but forbids the converse, any change in the present law is a matter for the legislature and not for the courts.
An order may be submitted on notice directing distribution of the intestate's personal estate to his next of kin in equal degree pursuant to the provision of § 512 (5), Title 12 Del.C.
NOTES
[1] The fact of illegitimacy was established at the hearing on claims against the estate. It was also established at such hearing that the decedent in 1942, while in armed service, named his sister beneficiary of his National Service Life Insurance policy making no provision for a contingent beneficiary.
[2] See § 512(4) Title 12 Del.C. infra, note 4.
[3] "When the mother of an illegitimate child dies intestate, such illegitimate child, or the issue of such who may be dead, shall share in her real and personal estate, in the same manner as legitimate children or their issue." § 1303, Title 13 Del.C.
[4] "(4) If there be no brothers or sisters of the whole blood or lawful issue of a deceased brother or sister of the whole blood, then to the intestate's brothers and sisters of the half blood and the lawful issue of such of them as shall have died before the intestate". § 512, Title 12 Del.C.