In the Matter of the Estate of James Russell Klingaman,
Deceased.

Ida M. Mummey, Administratrix of the Estate of James Russell
Klingaman, Deceased,
Appellant,

*vs.*

Foster E. Klingaman,
Appellee.

*Supreme Court on Appeal January 3, 1957.*

*George T. Coulson,* Morris, Steel, Nichols & Arsht, Wilmington, for appellant.

*Clement C. Wood,* Allmond & Wood, Wilmington, for appellee.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: James Russell Klingaman died in 1952 intestate, unmarried and without issue. He left to survive him a half-sister, an illegitimate child. The common mother had predeceased him. The nearest other kindred are cousins. The sister was appointed administratrix of his estate, which consisted solely of personalty.

The question before us is whether the sister is capable of inheriting her half-brother's estate. The answer depends upon the construction to be given to the Delaware statutes dealing with the rights of inheritance of illegitimate children.

The rule of the common law was that a bastard was "the son of nobody". He could not inherit property, and could not transmit it except to his lawful issue. *Burris v. Burgett,* 16 *Del.Ch.* 10, 139 *A.* 454. This harsh doctrine has been changed to a great extent by statute in many of the states. The first change in Delaware was effected by the act of February 26, 1855, 11 *Del.L. c.* 243. This act provided:

> "That when an illegitimate born person dies intestate and without lawful issue, his property, real and personal, if any such there be, shall pass, and belong to the mother, if living, and in case of her death, to her lawful issue share and share alike, subject always to the payment of debts and demands against such illegitimate person or persons, and to expenses of administration."

By an amendment in 1907, 24 *Del.L. c.* 224, the word "heirs" was substituted for the phrase "lawful issue share and share alike". The statute now appears in 13 *Del.C.* § 1302.

By the acts of 1917 and 1919 illegitimates became eligible to inherit intestate property. We pass over the act of 1917, 29 *Del.L. c.* 229, which was so loosely drawn as to require immediate amendment. The act of March 20, 1919, 30 *Del.L. c.* 200, as now found in 13 *Del.C.* § 1303, provides:

> "When the mother of an illegitimate child dies intestate, such illegitimate child, or the issue of such who may be dead, shall share in her real  and personal estate, in the same manner as legitimate children or their issue."

Our statute of distribution of intestate personalty provides, 12 *Del.C.* § 512:

> "When any person having title or right, legal or equitable, to any personal estate shall die intestate as to the same, the resi-

due of such personal estate after the payment of all legal demands and charges, shall be distributed by the personal representative of the decedent according to the following course or order:

"(1) To the children of the intestate and the lawful issue of such children who shall have died before the intestate;

"(2) If there be no child or lawful issue of the intestate, then to the father and mother of the intestate in equal shares; or if only one parent be living, all to such parent;

"(3) If there be no father or mother, then to the intestate's brothers and sisters of the whole blood and the lawful issue of such of them as shall have died before the intestate;

"(4) If there be no brothers or sisters of the whole blood or lawful issue of a deceased brother or sister of the whole blood, then to the intestate's brothers and sisters of the half blood and the lawful issue of such of them as shall have died before the intestate;"

The precise question before us is whether the act of 1919 is to be construed as conferring upon the illegitimate child heritable rights *through* his mother as well as direct from his mother; that is, whether he may inherit from her descendants or collateral kindred if she is deceased. The Vice Chancellor, upon the authority of *Burris v. Burgett*, 16 *Del. Ch.* 10, 139 *A.* 454, held that the act of 1919 confers upon illegitimate children no right of inheritance in the right of the mother, and accordingly awarded the estate to the cousins. The administratrix appeals.

■ We must first determine what rule of construction applies. We think that the statutes are remedial in nature and are to be construed as broadly as possible to remedy the harshness of the common law rule. This was a rule so manifestly unjust—so reminiscent of feudal times—that it has been almost uniformly condemned in American judicial decisions. The Supreme Court of Iowa has characterized it as " 'one of the reproaches of the common law which has shocked the legislative and judicial conscience of the civilized world.' " See *In re Clark's Estate*, 228 *Iowa* 75, 290 *N.W.* 13, 31.

We think there is no room here for the application of the rule that a statute in derogation of the common law must be strictly construed. This is a rule of little aid in modern times, *Warner Co. v. Leedom Construction Co., 9 Terry* 58, 97 *A.2d* 884, 887, and certainly has no force in the case before us. We are then to effectuate as far as reasonably possible the announced intention of the legislature to relax the harshness of the common law.

Considering first the act of 1855, as amended in 1907, we find that it embodies a very important change from the common law rule. Not only may a mother inherit from her illegitimate child, but if she be deceased her "heirs" may likewise inherit. The effect is to put the descent and distribution of an illegitimate's property upon the same basis as the descent and distribution of the property of a legitimate, so far as concerns property passing from or *through* the mother. This is so, because we think that the statute means that if the mother be deceased, her kindred take the property in right of their mother. We are aware that in *Magee v. Chambers,* 17 *Del.Ch.* 45, 147 *A.* 306, a contrary view was taken, on the authority of *Burris v. Burgett, supra,* but we cannot approve that view. In the light of the underlying purpose of the statute, we think that the legislature must have used the word "heirs" in a broad and non-technical sense to signify those persons who would upon her death take the mother's real or personal estate, as the case might be. This loose use of the word is not infrequent. See 1 *Bouv. Law Dict., Rawle's Third Revision, Heir, p.* 1432. They therefore represent the mother and inherit in right of the mother. Moreover, the statutes of descent and distribution must be examined in order to determine who are the heirs. Hence the statute of 1855 is to be regarded as to some extent a statute of descent. The effect of the act of 1855 as amended, therefore, was to permit an illegitimate to transmit property to and through the mother in the same manner as a legitimate.

The act of 1919 complements the act of 1855. It specifically provides that the illegitimate may inherit from the intestate mother her real and personal estate "in the same manner as legitimate children or their issue". Again, to determine the rights of inheritance of an

illegitimate child the statutes of descent and distribution must be looked to.

■ We think that these statutes are to be regarded as special statutes of descent and distribution, supplementing and fitting into the general provisions of the Code governing those subjects. The fact that they are included in a separate title of the Code is of little consequence.

■ So regarding them, we turn to the crucial question: May the act of 1919 be construed as conferring upon illegitimate children the same right to inherit in right of the mother as is conferred upon legitimates? We think that it can and should be so construed, for the following reasons:

■ The statute recognizes the illegitimate as the "child" of his mother for the purpose of inheriting her property under paragraph (1) of the rules of distribution in § 512 on a basis of complete equality with legitimates. To deny similar recognition under the other paragraphs of the same section seems to us to be both unjust and illogical. It is true that the literal reading of the statute appears to confine its operation to property inherited directly from the mother. But our courts have frequently held that a literal reading of statutory language that leads to unjust or mischievous results is to be avoided so far as reasonably possible. See, for example, the recent case of *Magill v. North American Refractories Company, post p.* 305, 128 *A.2d* 233, and cases cited.

We have said that to deny to the illegitimate the right asserted by her is both unjust and illogical. The injustice of the results needs no comment. Indeed, it is candidly conceded by the opposing claimants. And the illogic is equally clear. If a literal construction of the statute be adopted, the legitimate brother may inherit from the illegitimate sister—a right conferred by the act of 1855 and not existing at common law; but the illegitimate sister, though fully qualified to share with him the estate of the common mother, may not inherit from him as his sister.

The result of such a construction would be that statutes obviously designed to remove the so-called "taint" of illegitimacy would enlarge the rights of the legitimates to inherit in right of their mother but would make no corresponding enlargement for the benefit of the illegitimates. Such a result would be so highly unreasonable that it is to be presumed that the legislature could not have intended it.

When we turn to the decisions in other States construing statutes similar to our own, we find persuasive authority in support of the conclusion above indicated.

In *Briggs v. Greene,* 10 *R.I.* 495, the Supreme Court of Rhode Island construed a statute providing: "Bastards shall be capable of inheriting or transmitting inheritance, on the part of the mother, in like manner as if they had been lawfully begotten of such mother." The court held that by this statute illegitimates were put upon the same footing as legitimates.

The argument was made that the claimant could not inherit as sister of the intestate, because the descent was not direct from the mother but direct from the sister. The court said:

"The act does not expressly declare them to be sisters, but does it not impliedly? Were we to ask for the definition of sisters, the answer would be but the statement of the relation in which these two persons are by this act made to stand to the mother, illegitimate daughters of the same mother. Such can be no other than sisters. They are so held by the Supreme Court of Vermont, under a similar statute of that state."

It is to be noted that the court did not rest its decision upon the clause of the statute that reads: "on the part of the mother". The court said:

"Had the words, 'on the part of their mother', been omitted from this section, the construction must still be the same, for he has no kindred except on the part of the mother. The whole course of descent to and from him is thus on her part."

An almost identical statute of Virginia was construed in *Garland v. Harrison,* 8 *Leigh, Va.* 368, to permit the mother and illegitimate brothers to inherit from the intestate. The court declined to follow the decision in *Stevenson's Heirs v. Sullivant,* 5 *Wheat.* 207, 5 *L.Ed.* 70, in which the Supreme Court of the United States had construed the statute narrowly and had held that it did not provide for any right of inheritance by an illegitimate from a deceased brother.

*In re Clark's Estate, supra* [228 *Iowa* 75, 290 *N.W.* 31], involved the construction of an Iowa statute, Code 1935, § 12030, *I.C.A.* § 636.45, providing:

> " 'Illegitimate children inherit from their mother and she from them.' "

The court said that this legislation, being remedial in nature, had uniformly been most liberally construed to effect its purpose to the fullest extent. After reviewing the Iowa decisions the court held:

> "Under our decisions construing the statutory sections the illegitimate child after recognition has all of the rights of inheritance of a legitimate child. That means he has the same right to transmit an inheritance and to receive one as a legitimate child. The brother or sister, niece or nephew can therefore be the heir respectively of a brother or sister, or an aunt or uncle, regardless of whether the latter person is of legitimate or recognized illegitimate birth".

In *Barron v. Zimmerman,* 117 *Md.* 296, 83 *A*: 258, 259, the statutes provided for inheritance by an illegitimate from the mother and provided that the mother, or if she were dead, her heir at law, should inherit from the illegitimate. There was no specific provision for the illegitimate to take the property of a brother or sister of his deceased mother. The court construed the statutes as integral parts of the statutes of descent and distribution and held that the illegitimate could inherit. The court said:

> "* * * if we were to deny the right here asserted by the appellant, it would have to be upon the ground that, although

he is treated by the 'inheritance' article of the Code as if he were a legitimate child of his mother for the purpose of being her heir at law, he is to be refused recognition as her 'child' under the same article for the purpose of representing her in the course of descent."

We are aware that there is authority to the contrary. With respect to this division of opinion the Supreme Court of Rhode Island, in *Rhode Island Hospital Trust Co. v. Hodgkin*, 48 *R.I.* 459, 137 *A.* 381, 383, said:

"After a somewhat extended examination of the authorities, it appears to us that the apparent conflict of opinion arises less from a difference in statutory provision than from the diametrical views which have been taken of the nature of such statutes: as to whether they should be regarded as remedial, and so to be liberally construed, or as in derogation of the common law and requiring a strict construction. There has resulted a lack of uniformity in the reports with reference to nearly every question which has arisen as to the status and the legal rights of illegitimate children under the statute."

In rejecting the reasoning of these authorities the court below relied upon the prior case of *Burris v. Burgett, supra*.

The Chancellor there took the view that the statute did not qualify illegitimates to inherit except directly from the mother. It was held that an illegitimate daughter of a deceased sister could not inherit on the part of her mother the share of the estate that her mother would have taken if living.

The Vice Chancellor naturally felt bound by this decision; but it has never been approved by this Court, and we are at liberty to examine it. This is so, notwithstanding that it involves a rule of property. *Cf. Iaconi v. American Insurance Co.*, 8 *Terry* 167, 47 *Del.* 167, 89 *A.2d* 141, 36 *A.L.R.2d* 604.

An examination of the opinion in the *Burris* case shows that the court applied the rule of construction that if a statute is in derogation

of the common law, even if remedial in nature, it is not to be construed as extending beyond its literal meaning. We think that the court applied too rigid a test. The preferable rule of construction here, for the reasons already given, is that the statute will be construed as broadly as possible in order to remedy a gross and manifest injustice of the common law. Accordingly, *Burris v. Burgett, supra,* is overruled. Also, we must reject the language of *Magee v. Chambers, supra,* based on the *Burris* case, to the effect that the person taking as heir at law under the act of 1855, as amended, takes as *"designata persona"* and not in the right of the mother.

Our conclusion is that the half-sister of the deceased is capable of inheriting the estate of the deceased, and that it must be distributed to her.

It follows that the order below must be reversed. The case is remanded to the Court of Chancery of New Castle County, with instructions to vacate the order of distribution of January 19, 1956, and to enter an appropriate order in accordance with this opinion.