## ECCLES LUMBER CO. v. MARTIN et al.

No. 1711.    Decided November 14, 1906 (87 Pac. 714).

1. MECHANICS' LIENS—PROPERTY SUBJECT TO LIEN.— Under Revised Statutes 1898, tit. 39, c. 1, entitled "Mechanics' Liens," creating a mechanics' liens, and providing for the enforcement thereof, etc, a mechanic's lien attaches to land, and, unless the person against whom the claim is made has some estate in the land on which the improvement is made, no lien attaches either to the land or the improvement.

2. SAME—CONTRACT BY OWNER OR AGENT—NECESSITY.—A contract, express or implied, for an improvement on land must have been made with the owner thereof or his authorized agent before a claim for a lien for the improvement can be maintained.[1]

3. SAME—STATUTES—CONSTRUCTION.—Revised Statutes 1898, section 1386, prescribing the necessary acts to be done by a claimant to acquire a lien, and section 1387, providing that liens against two or more buildings may be included in one claim, but the claim must designate the amount claimed to be due on each building, must be construed in connection with each other, and the two must be construed in connection with the chapter entitled "Mechanics' Liens," for, to arrive at the legislative intent, the court cannot segregate a section or a part of a chapter on a subject, but the object of the law as a whole must be considered.

4. SAME.—Revised Statutes 1898, tit. 39, c. 1, creating mechanics' liens, prescribing the methods to secure them, and providing a procedure to enforce them as against the property, the owner and among other claimants, must be construed on the theory that some of the provisions are intended for the owner, and others intended for the claimants.

5. SAME—NATURE OF LIEN—STATUTE.—A mechanics' lien is statutory, and not contractual, and a lien cannot be acquired unless the claimant complies with the statutory provisions.

6. SAME—STATEMENT OF LIEN—SUFFICIENCY.—Revised Statutes 1898, section 1386, prescribes the acts necessary to be done to acquire a lien, and provides that the claimant shall make a statement of his demand after deducting credits and offsets. Section 1387 provides that liens against two or more buildings may be included in one claim, provided the claim designates the amount

---

[1] Morrison, Merrill & Co. v. Clark, 20 Utah 432, 59 Pac. 235, 77 Am. St. Rep. 924; Sanford v. Kunkel, 30 Utah 379, 85 Pac. 363.

claimed to be due on each building. *Held*, that a statement for a lien for materials furnished for the erection of two buildings on one parcel of land, which sets forth the whole amount due, is sufficient to create a lien, though it does not set forth the amount claimed to be due for materials furnished on each building, for the statement of the amount claimed, as required by section 1386, is to acquire a lien, while the statement required by section 1387 is for the purpose of enabling the court to protect the interests of the lien claimants among themselves.

7. SAME.—Comp. Laws 1888, section 3812, provides that where one claim is filed against two or more buildings, the claim must designate the amount due on each building, otherwise the lien is postponed to other liens, and "the lien of such claimant does not extend beyond the amount designated, as against other creditors having liens, by judgment, . . . upon either of such buildings . . . or upon the land upon which the same are situated." Sess. Laws 1890, p. 24, c. 30, amending the lien law, omits section 3812. Sess. Laws 1894, p. 44, c. 41, amending the lien law, re-enacts the section as embodied in Revised Statutes 1898, section 1387, providing that liens against two or more buildings may be included in one claim, provided the claim designates the amount due on each building. *Held*, that while the quoted portion of the original section was in force, the court was compelled to enforce the penalty where the statement required by the section was omitted, whether the equities required it or not, while under the section, as amended, the court is at liberty to enforce it or not, as equity demands in each particular case.

8. STATUTES—MANDATORY STATUTES—CONSTRUCTION.—The mere fact that a statute is mandatory in form does not necessarily make it so in its effect.

9. MECHANICS' LIENS—STATEMENT OF LIEN—SUFFICIENCY.—An owner employed a contractor to build two houses on one parcel of land. The construction of the buildings was treated as an entirety. *Held*, that the statement of a lien setting forth the amount due, without stating the amount due on each building separately, was sufficient; for the two buildings were not separate buildings, within Revised Statutes 1898, section 1387, providing that liens against two or more buildings may be included in one claim, provided the claim designates the amount due on each building.

10. STATUTES—CONSTRUCTION.—Where a statute requires certain things to be done to acquire a right, there must be a substantial compliance with the statute; but, where a statute requires things to be done in case certain conditions exist, the statute is not operative, unless the conditions are present.

APPEAL from District Court, Weber County; J. A. Howell, Judge.

Action by the Eccles Lumber Company against Ann H. Martin, executrix of James E. Horrocks, deceased, and others. From a judgment of dismissal, plaintiff appeals.

REVERSED AND REMANDED.

*T. D. Skeen* for appellant.

*T. N. Kimball* for respondents.

APPELLANT'S POINTS.

The authorities are almost uniform in holding that where work is done or material furnished in the erection of two or more houses under an entire contract upon one lot or parcel of land owned by one person. A single lien attaches upon the whole estate for the whole amount claimed and no apportionment is necessary. (*Wall v. Robinson,* 115 Mass. 429; *Lyon v. Logan,* 68 Texas 521; *Chadbourn v. Building Assn.,* 71 N. C. 448; *Marston v. Kenyon,* 44 Conn. 350; *Batchelder v. Rand,* 117 Mass. 176; *Paine v. Bonney,* 4 E. D. Smith 750; *Phillips v. Gilbert,* 101 U. S. 721; *Morgan v. Chase,* 52 N. Y. 346; *Carpenter v. Leonard,* 5 Minn. 119; *Orr v. Insurance Co.,* 86 Ill. 260; *Hall v. Sheehan,* 69 N. Y. 618; *Brick Co. v. Spilman,* 76 Md. 337; *Williamette Co. v. Shea,* 32 Pac. 759; *Lax v. Peterson,* 42 Minn. 221; *Lumber Co. v. Newton,* 72 Iowa 90; *Doolittle v. Plenz,* 16 Neb. 123, 20 N. W. 116; *Fullerton v. Leonard* [S. D.]; 52 N. W. 325; 2 Jones on Liens, sec. 1313; *Wilcox v. Woodruff,* 17 L. R. A. 314, 316; *Quinby v. Durgin,* 148 Mass. 104; *Carr v. Hooper* [Kan.], 29 Pac. 398; *Brick Co. v. Dunkerly,* 85 Md. 199, 36 Atl. 761; *Worthley v. Emerson,* 116 Mass. 374; *Williams v. Judd-Well Co.* [Ia.], 59 N. W. 271; *Sash & Door Co. v. Case* [Neb.], 60 N. W. 576; *Lehmer v. Horton* [Neb.], 93 N. W. 964; *Badger Lumber Co. v. Holmes* [Neb.], 62 N. W. 446.)

FRICK, J.

This action was commenced to foreclose a mechanic's lien; judgment of dismissal being entered upon a demurrer to the

complaint. With the hope of assisting to a better understanding of the views hereinafter expressed, we will, in our own way, make a somewhat extended statement of the facts contained in the complaint, which, after stating the corporate existence of the appellant, is, in substance, as follows:

That James E. Horrocks, during his lifetime, and at all times mentioned in the complaint, was the owner in fee of certain real estate in Ogden City, Utah, described as follows: Part of lot twenty-seven (27), block four (4), of South Ogden survey addition to Ogden City, Weber county, Utah, to wit, beginning at the northwest corner of said lot twenty-seven (27); thence east 162 feet; thence south 132 feet; thence west 30 feet; thence north 66 feet, thence west 132 feet; thence north 66 feet to the place of beginning. That on or about the 1st day of September, 1904, said Horrocks entered into a written contract with respondent Peterson, whereby said Peterson agreed to build for said Horrocks two frame dwelling houses upon the real estate above described, and to furnish and provide all of the lumber, building material, and labor necessary to complete said houses, and to complete the same on or before the 1st day of November, 1904, all for the sum of $2,750, to be paid by said Horrocks to said Peterson; payment to be made in installments as the work on said houses progressed, and the last payment of $500 was to be made when said houses were fully completed. That thereafter, on the 6th day of September, 1904, said Peterson, by a written contract, sublet the construction of said houses, together with the furnishing of certain specified material, to the respondent Fred. Howard. Said Howard agreed to complete said houses within thirty-six working days from said date, and to receive the sum of $1,575 for what he agreed to do, payments to be made from time to time, the last payment of $775 to be made when said houses were completed. That thereafter, on the 19th day of September, 1904, said Howard entered into a contract with appellant, whereby appellant agreed to furnish said Howard with lumber and other specified material necessary to complete said houses. That in pur-

suance of said agreement, and with the assent and approval
of said Peterson, the original contractor, and said Horrocks,
the owner of the premises above described, appellant, be-
tween the 19th day of September and the 25th day of Octo-
ber, 1904, sold, furnished, and delivered said building ma-
terial to said Howard upon said premises to be and which was
actually used in the construction of said houses, amounting
in all, according to the prices agreed upon, and after deduct-
ing all credits, to the sum of $710.48. That said contracts
were entire, and appellant is unable to state the amount due
or the sum paid on each of said houses separately. That the
appellant furnished all the lumber and building material re-
quired to complete said houses. That the same was to be paid
for on the 1st day of the month succeeding the date of de-
livery. That no payments were made for the construction
work of said houses before the first material was actually fur-
nished by the appellant, except the sum of $600. That within
forty days from the date of delivery of the last material, the
appellant filed with the county recorder of Weber county, and
caused to be recorded, a notice of intention to claim, and did
claim, a mechanic's lien upon the real estate above described.
The notice so filed and recorded was duly verified, and in de-
tail complied with the requirements of section 1386, Revised
Statutes 1898, all of which is stated in the complaint. That
said Horrocks died on the 20th day of March, 1905, leaving
a last will, wherein the respondent Ann H. Martin was named
as executrix, which will was thereafter on the 29th day of
June, 1905, duly admitted to probate, and that letters testa-
mentary were duly issued to said Ann H. Martin, and that
she is the duly qualified executrix of the last will of said
James E. Horrocks, deceased. That the appellant duly pre-
sented its claim for the amount claimed, with interest and
costs, to said executrix for allowance against said estate. That
the same was disallowed and rejected by her, and she refuses
to pay the same or any part thereof. A copy of the notice
of intention to claim a lien is attached to said complaint, and
made a part thereof. The notice sets forth in detail all mat-
ters required by section 1386, Revised Statutes 1898, but

fails to state the amount due to the claimant on each build-
ing separately.

Upon substantially the foregoing facts, the appellant pray-
ed judgment for the amount of its claim, to foreclose said
lien, for the sale of the property, and for general relief.    To
this complaint the respondent Ann H. Martin, as executrix
of the said last will, interposed a general demurrer upon the
sole ground that said complaint does not state facts sufficient
to constitute a cause of action either against her or the estate
of the deceased and that the facts stated are insufficient to
entitle appellant to the relief prayed for.    The trial court
sustained this demurrer, and the appellant, refusing to further
amend the complaint, but electing to stand thereon, judgment
dismissing the action and for costs was directed to be rendered
against the appellant, from which judgment this appeal is
prosecuted.

The only question presented by this record therefore is, did
the court err in sustaining said demurrer and in entering
judgment dismissing the action as above stated?    The trial
court held that the notice of intention to claim a lien was in-
sufficient, for the reason that the amount due on each one of
the two houses was not separately stated; and that therefore
there was no lien, and hence the judgment dismissing the ac-
tion. In order to determine the correctness of the court's rul-
ing, it becomes necessary to analyze and construe sections 1386
and 1387, c. 1, 39, Revised Statutes 1898, entitled "Mechan-
ics' Liens." This chapter is composed of 28 sections consecu-
tively numbered from 1373 to 1400.    In those sections is con-
tained an entire system or scheme respecting the creation of
mechanics' liens in favor of persons who furnish any material,
or perform any labor, or render any skill or service for any
improvements on land.    By the various amendments to the
original law from time to time, and as the same has been con-
strued by this and other courts under similar statutes, a me-
chanic's lien attaches to the land, and, unless the person
against whom the claim for a mechanic's lien is made has
some interest or estate in the land upon which the improve-
ment is made, no lien attaches to the improvement as such;

further, that a contract express or implied must have been made with the owner of the land or his authorized agent in order to successfully initiate a lien. (*Morrison, Merril & Co. v. Clark,* 20 Utah 432, 59 Pac. 235, 77 Am. St. Rep. 924; *Early v. Burt,* 68 Iowa 716, 28 N. W. 35; *Huff v. Jolly,* 41 Kan. 537, 21 Pac. 646; *Fetter v. Wilson,* 51 Ky. 90; *Wagar v. Briscoe,* 38 Mich. 587-595.) The case of *Sanford v. Kunkel,* 30 Utah 379, 85 Pac. 363, in no way departs from the doctrine that in order to acquire a lien an interest in the real estate upon which the improvements are made is necessary. That case is based upon the sound equitable doctrine that where the law has given a right to one person it cannot be destroyed by the wrongful act of another.

Having thus reached the conclusion that under our present statute a mechanic's lien can only be acquired on land, and that the buildings or improvements are to be taken as appurtenant merely, we will proceed to an examination of our statutes to determine whether the lien in question is void or valid. Section 1386, in which are contained the matters which must be stated in a notice of intention to claim a lien, reads as follows:

"Every original contractor, within sixty days after the completion of his contract, and every person save the original contractor claiming the benefit of this chapter, must, within forty days after furnishing the last material or performing the last labor for any building, improvement, or structure, or for any alteration, addition to, or repair thereof, or performance of any labor in or furnishing any materials for any mining claim, file for record with the county recorder of the county in which the property or some part thereof is situated, a claim in writing containing a notice of intention to hold and claim a lien, and a statement of his demand, after deducting all just credits and offsets, with the name of the owner, if known, and also the name of the person by whom he was employed, or to whom he furnished the material, with a statement of the terms, time given, and conditions of his contract, specifying the time when the first and last labor was performed, or the first and last material furnished, and also a description of the property to be charged with the lien, sufficient for identification, which claim must be verified by the oath of himself or of some other person."

This is followed by section 1387, which is as follows:

"Liens against two or more buildings, mining claims, or other improvements owned by the same person or persons may be included in one claim; but in such case the person filing the claim must designate therein the amount claimed to be due to him on each of such buildings, mining claims, or other improvements."

These sections must be construed in connection with each other, and the two together must be construed in connection with other provisions contained in the whole of chapter 1 aforesaid. In order to arrive at the true legislative intent, courts cannot segregate a section or a part of an entire chapter upon a given subject, and from such part alone determine the true meaning or intent of the whole. Moreover, the object or purpose of the law as a whole must be considered. It often occurs that, in a series of sections relating to one subject, provisions are found in one or more sections that are in seeming conflict with other sections or parts of the same act. It also occurs that in an act like chapter 1, aforesaid, where rights are created, the methods to secure them are prescribed, and the procedure provided for to enforce such rights as against the property, the owner, and among other claimants, certain provisions may be intended to affect some and not others. Some of these provisions may be, and frequently are, intended for the benefit of some who may stand in a particular relation, and not to others standing in a different relation to either the owner or the property. This is the case with respect to our mechanic's lien law, as we shall attempt to show. Moreover, as is well stated in Boisot on Mechanics' Liens, section 4:

"The doctrine upon which the lien is founded is the consideration of natural justice, that a party who has enhanced the value of property by incorporating therein his labor or materials shall have a preferred claim on such property for the value of his labor or materials."

But the respondent contends, and the contention is sound, that a mechanic's lien is purely statutory, not contractual, and none can be acquired unless the claimant has complied with the several provisions of the statute creating the lien. We yield full assent to this doctrine, and likewise assent that, where the statute fails, courts cannot create rights, and should

not do so by unnatural and forced construction. But, while all this is sound doctrine, courts should not withhold the benefits intended by a series of sections on one subject by a too literal or strict construction of one section, or part of the whole series, so as to destroy intended effects of other parts.

It is the true intent and spirit contained in all the sections upon a given subject that constitutes the law upon that subject, not what may be contained in only one of them. The rule that in our judgment should govern, is, we think, correctly stated in 20 Am. & Eng. Ency. Law, on page 276, where the author says:

"A lien once acquired by labor performed on a building with the consent of the owner should not, however, be defeated by technicalities, when no rights of others are infringed, and no express command of the statute is disregarded."

With these rules and principles in mind, we are prepared to proceed to an analysis of sections 1386 and 1387. Such an analysis becomes necessary, for the reason that this court has in no case that we are aware of, either done so or attempted to do so. True, the question was raised in the case of *Garner v. Van Patten,* 20 Utah 342, 58 Pac. 684, but, as the court in that case sustained the lien, although, as appears from the case, the claimant had not strictly complied with the provisions of section 1387, the question here presented, if decided at all, was adverse to the respondent in this case. The question in this case is, can a claimant obtain a valid lien as against an owner of property upon which the lien is claimed without including the statement required by section 1387? We think he can, for the following reasons:

It will be observed that by the provisions of section 1386, wherein are prescribed the necessary acts to be done by the claimant to acquire a lien, it is provided among other things that the claimant shall make "a statement of his demand after deducting all just credits and offsets." The owner is thus fairly informed of the amount claimed against his property. If the amount is correct, he will have this amount to pay — no more, no less — to discharge the lien. If it is incorrect, he is fully apprised of the fact, and

can make his defense. He therefore is not concerned in case
the lien is claimed on more than one building erected upon
one parcel of land, what amount is due on one or the other of
the buildings. The lien is an entirety against the whole par-
cel of land and the improvements appurtenant thereto. As
we read the mechanic's lien law, it was not intended that the
provisions contained in section 1387 were intended either as
an essential in acquiring a lien, or made for the benefit of
the owner. The lien is complete by complying with section
1386. The statement of the amount due on buildings sepa-
rately, as provided in section 1387, would be but a restate-
ment of the amount of the claim as required by section 1386,
in another form. As we view it, this restatement was not in-
tended as an essential part in acquiring the lien. It could
subserve no purpose to attain that end. It could in no way
affect the amount claimed against the entire property. It,
however, subserves a purpose in respect to different lien
claimants claiming liens against several houses or improve-
ments erected on different parcels of land included in one
lien. To determine the equities as between lien claimants of
the same class where the law requires them to prorate, it is
important to determine the exact amount due to each claimant
upon each of the several buildings or improvements erected
on different parcels of land in order to prevent one from get-
ting more than his share in case the proceeds of a sale of the
property are insufficient to satisfy all the claimants in full.
This, however, does not affect nor concern the owner of the
property, nor does it affect the validity of the lien as such, as
against him or the property. But it is argued that effect
must be given to all the requirements of the statute respecting
the things to be done to acquire a lien. This is true, but, as
we have attempted to show, a discrimination must be made
between the things that are necessary to acquire a lien and
those that are merely intended to protect the interests of the
lien claimants between or among themselves. The statements
in section 1387, as we view it, clearly belong to the latter
class. The statements of the claimant provided for in section
1386 are made sufficient to acquire a lien and to protect the

owner of the property. To hold that a restatement of the amount of the claim in another form is likewise necessary to acquire a lien, unless the statute requires this to be done in terms, is adding, by construction, an essential not required by the statute. The construction we place upon the sections quoted gives the language contained therein full force and effect. · The statement required in section 1386 of the amount claimed is thus to acquire a lien, and the statement in section 1387 is for the purpose above indicated.

But it is further argued—and the argument at first blush seems plausible—that while the effect of the two section construed together was, as we claim it to be, as originally enacted, such is not the case now, because section 1387 has been amended, and thereby its effect changed. The section corresponding to the present section 1387 is found in 2 Comp. Laws, 1888, and is there designated as section 3812, and reads as follows:

"In every case in which one claim is filed against two or more buildings, mining claims, or other improvements owned by the same person, the person filing such claim must at the same time designate the amount due him on each of such buildings, mining claims or other improvements, *otherwise the lien of such claims is postponed to other liens. The lien of such claimant does not extend beyond the amount designated, as against other creditors having liens, by judgment, mortgage, or otherwise, upon either of such buildings or other improvements, or upon the land upon which the same are situated.*"

The law was recast and amended in 1890 (chapter 30, p. 24, Sess. Laws 1890), wherein section 3812 is omitted. It was again amended in 1894 (Sess. Laws 1894, p. 44, c. 41), where it was re-enacted in its present form. It is conceded, in fact no one can dispute on reasonable grounds, that, with the italicized portion added, the failure to state the amount due on each of several buildings or improvements could not invalidate the lien as against the property or the owner thereof, but its effect would only be to postpone the lien to others in the same class. The logic of this admission is a concession that the statement of the amount due on each building separately, as required by section 1387, was not an essential part

of the lien as such. It is urged that, since the Legislature eliminated the provision of what the effect should be in case of a failure to make the statement required in said section 1387, it was thereby intended to make the statement an essential part of the lien itself. We cannot yield assent to this deduction. If the Legislature intended that a failure to make such a statement should invalidate the lien theretofore valid without it, we think it would have said so in plain terms. We think that the amendment should not, by mere construction, be given that effect unless no other construction is reasonable. It frequently occurs that statutes are enacted declaratory of some rule of law or equity. Our own statutes teem with such instances. The mere fact, therefore, that it is enacted into a statute does not create the right or remedy, as the case may be. Both would exist without the statute. The statute in such cases merely states the right without having recourse to the original rule. The fact, therefore, of the omission of the equitable rule contained in the italicized portion of the original section of which section 1387 is an amendment in our judgment would not effect the court in working out equity between lien claimants. The purpose of the omitted portion was to fix the penalty for the failure to state separately the amount due on each building. Is it reasonable to suppose that the Legislature, by removing the mild penalty, thereby intended to create a far more drastic one without saying so in terms? We do not think so. We think the effect of an omission to state the amount claimed on each building with and without the omitted portion of the section above quoted amounts to this: While that portion of the original section was in force, the courts were compelled to enforce the penalty in every case where the statement required by section 1387 was omitted, whether the equities required it or not, while, under the present form of that section, the court is at liberty to enforce it or not as justice and equity demand in each particular case. The mere fact that section 1387 is mandatory in form does not necessarily make it so in its effects. It is an elementary rule of construction that the mere form of the

statute does not control in this respect. (Sutherland on Stat. Const., sections 446, 447.)

In view of the somewhat singular conditions arising by both the terms as well as the conditions of our mechanic's lien law, in view of the amendments and changes and omissions therein, we have been unable to find authorities directly in point upon the matters discussed herein. The following cases, however, in some degree at least, support all the views herein express-ed. These decisions are based upon statutes similar in many respects to our own: *Williamette Co. v. Shea* (Or.), 32 Pac. 759; *Lyon v. Logan,* 68 Tex. 521, 5 S. W. 72, 2 Am. St. Rep. 511; *Phillips v. Gilbert,* 101 U. S. 725, 25 L. Ed. 833; *Wall v. Robinson,* 115 Mass. 429; *Lax v. Peterson,* 42 Minn. 221, 44 N. W. 3; *Wheeler v. Ralph* (Wash.), 30 Pac. 709.) There are cases which hold that provisions substantially like those contained in section 1387 are essentials in acquiring a lien. Whether such provisions are part of the section where-in are contained the essentials to acquire a lien or not, we cannot determine without recourse to the statute creating the lien, and, not having access to them, we cannot examine them. It is manifest, however, that the courts that have so held have construed the mechanic's lien law with undue strictness. (*Wilcox v. Woodruff,* 61 Conn. 578, 24 Atl. 521, 1056, 17 L. R. A. 314, 29 Am. St. Rep. 222, is a fair type of the cases holding adversely to the views that we entertain. In that case, however, there are two able dissenting opinions which, to our minds, state the rule of construction respecting mechanic's lien statutes correctly. The cases of *Crawford v. Anderson,* 129 Ind. 117, 28 N. E. 314, *Culver v. Elwell,* 73 Ill. 536, and some others, perhaps, are of the same class. None of these cases, however, in our judgment, reflect the true spirit of our mechanic's lien law, and therefore we decline to follow them. But there is room for contention that the demurrer was erron-eously sustained upon another ground. As appears from the complaint, the contracts, and from the description of the property, the whole matter was treated as an entirety by all parties in interest. This being so, the two buildings were not, within the purview of our statutes, to be treated as separate

buildings. This for the reason that all liens of any class would prorate upon the whole, regardless as to whether the labor was performed on one or the other of the buildings, or the material was used in the one or the other. The very purpose of section 1387 being thus eliminated from the claim in this case, a noncompliance with it cannot affect any rights. This statement must, of necessity, be taken in the light of our construction of the several sections of our lien law and their effect in relation to each other as explained in this opinion. We desire to affirm again that, where a statute requires certain things to be done to acquire a right, nothing short of a substantial compliance with the statute will answer; but where a statute requires things to be done in case certain conditions exist, then, before the statute can be operative, it must appear that the conditions are in fact present. If we are right, therefore, that in this case the lien and the buildings are to be treated as an entirety, then the conditions provided for in section 1387 did not exist and the section is not applicable. These views, as we think, are sustained by the following California and other cases, which are based on statutes very similar to our own: *Booth v. Pendola,* 88 Cal. 36, 23 Pac. 200, 25 Pac. 1101; *Warren v. Hopkins,* 110 Cal. 506, 42 Pac. 986; *Post v. Fleming* [N. M.], 62 Pac. 1087; *Idaho M. & M. Co. v. Davis,* 123 Fed. 396, 59 C. C. A. 200.

The judgment is therefore reversed, and the cause remanded with instructions to the district court to vacate the judgment, reinstate the case, overrule the demurrer, and permit the respondent to answer if she is so advised, and proceed with the case in accordance with this opinion. Costs of this appeal to be taxed against respondent.

McCARTY, C. J., and STRAUP, J., concur.