WARNER COMPANY, a corporation of the State of Delaware, Appellant, v. LEEDOM CONSTRUCTION Co., a corporation of the State of Delaware, owner or reputed owner; and MASON-STEEL CONSTRUCTION COMPANY, a corporation of the State of Delaware, Appellees.

(*June* 13, 1953.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*Herbert L. Cobin* for appellant.

*Clyde M. England, Jr.,* and *John Van Brunt, Jr.,* for appellee Leedom Construction Co.

Supreme Court of the State of Delaware, No. 1, 1953.

SOUTHERLAND, C. J.:

This appeal involves the construction and effect of the provision of the Delaware mechanics' lien law requiring apportionment of a joint lien claimed upon two or more structures.

The facts are these:

Some time in 1949 appellee Leedom Construction Company began the work of constructing a residential building development upon a tract of land in New Castle County owned by it. Franklin Builders, Incorporated, was the general contractor; and Masonsteel Construction Company was a subcontractor engaged to install, among other things, the concrete cellars, foundations and sidewalks. Warner Company, whose business is the

sale of concrete and other materials for construction purposes, was engaged by the Masonsteel Construction Company to supply concrete and other materials required by the latter. These parties will be referred to as Leedom, Franklin, Masonsteel and Warner.

Beginning on September 19, 1949, and ending on November 28, 1950, Warner supplied to the building project large quantities of concrete and other materials. These materials were incorporated into a large number of the houses that were built in the development. The materials were sold on open account and supplied as ordered from time to time. Franklin's method of development was to build several houses at a time and as these were sold to build others, depending upon the demand. Franklin's President testified: "We built them as we sold them." The materials were delivered to the site of the development but usually not to any particular lot or structure. The material in a single delivery was frequently incorporated into two or more structures, and no record was kept—in many cases no record could be kept—of the quantity or identity of the materials used in a particular structure.

The materials furnished by Warner were incorporated into eighty-seven houses and appurtenant pavements. About two-thirds of the houses had been sold at the time when the present suit was filed.

Masonsteel was apparently in financial difficulties shortly after undertaking its work upon the project. In June, 1950, its unpaid balance with Warner was so large that an arrangement was effected under the terms of which future supplies were paid for by Franklin. The parties are not in accord as to the interpretation to be put upon the new arrangement; but in the view we take of the matter this dispute is unimportant. It is sufficient to note that the balance due is attributable to materials delivered prior to June 20, 1950.

On November 28, 1950, when Warner made its last delivery of materials to the project, there was due to it from Masonsteel

the sum of $16,318.25. Masonsteel was then apparently insolvent, and on February 12, 1951, Warner filed in the Superior Court a complaint and statement of claim in a mechanics' lien proceeding, asserting a lien upon all the eighty-seven structures above referred to. The statement of claim averred that all of the materials supplied by it had been furnished upon the credit of all the structures and premises on which the lien was asserted, and that the entire claim was due upon the structures and premises considered as a unit, that is, a continuous, single building development. Alternatively, Warner averred that if apportionment of the claim was required, it had in fact made such apportionment, as appeared from an exhibit attached to the statement of claim.

Leedom answered, setting up several defenses, only one of which we need consider. This is the defense that Warner had failed to set forth the amount claimed to be due upon each such structure, as required by the mechanics' lien statute. The court below upheld this defense and dismissed the action.

The pertinent provisions of the statute are as follows:

"It shall and may be lawful for any person or persons having performed or furnished work and labor or material or both, to an amount exceeding twenty-five dollars in or for the erection, alteration, or repair of any house, building or structure, in pursuance of any contract, express or implied, with the owners of such house, building, or structure, or with the agent of such owner, or with any contractor who shall have contracted for the erection, alteration, or repair of the same, and for the furnishing of the whole or any part of the materials therefor, including any person who shall have performed or furnished work and labor or material, or both, for or at such house, building, or structure, under a contract with or order from any subcontractor, to obtain a lien upon such building, house or structure and upon the ground upon which the same may be situated, or erected, subject, however, to the following restrictions, limitations and qualifications, that is to say:"

After prescribing certain conditions respecting the times within which statements of claims must be filed and specifying the matters that must be set forth therein, the statute provides:

"Any judgment obtained upon such claim, as hereinafter provided, shall become a lien upon such building, house or structure, and upon the ground upon which the same is situated, erected or constructed, and shall relate back to the day upon which said work and labor was begun, or the furnishing of said material was commenced. In every case in which one claim for work and labor or materials shall be filed by the same person or persons against two or more buildings, houses, or structures owned by the same person or persons, for building, altering or repairing two or more buildings or structures owned by the same person or persons, the claimant shall, at the time of filing such joint claim, designate the amount which he claims to be due to him on each of such buildings, houses or structures." 1935 *Code*, Par. 3324.[1]

The principal question before us is whether the requirement of apportionment embodied in the last quoted sentence is applicable to the case at bar; that is, whether apportionment is required of materials furnished to separate houses in a building development constructed as a unit or as a series of units.

Leedom contends that the statute is mandatory in all cases and must be complied with, else the claimant obtains no lien. Warner replies that the statute should be liberally construed in favor of the claimant; that the entire building development, for the purpose of the mechanics' lien law, constitutes one entire unit to which materials were furnished under one contract applicable to the development as an entirety; and that the requirement of apportionment is inapplicable to such a case and a single lien on the entire development may be obtained.

---

[1]The text is taken from the 1935 *Code*, which was in force during the time when the materials were furnished.

Although not stated in that form, Warner's contention is in effect that the statutory provision for apportionment is directory and not mandatory. Is this construction acceptable?

The statute is mandatory in form. It says that "in every case" in which a lien is claimed on two or more structures, "the claimant shall, at the time of filing such joint claim, designate the amount" claimed to be due upon each structure. Moreover, this requirement is one of the "restrictions, limitations and qualifications" that constitute the conditions upon which the lien may be obtained. Like the provisions specifying the time within which a claim must be filed, the requirement of apportionment is an essential and important element of the statute. It is the condition upon which the statutory lien on two or more structures may be obtained. The statute creates a special lien and a special method of obtaining it. The general rule is that the essential elements of such a statute must be complied with, that is, that provisions prescribing the conditions upon which the remedy is obtained are mandatory. 50 *Am. Jur., Statutes*, § 22.

An unbroken line of decisions of the Superior Court buttresses this conclusion. In *Durney v. DiGuglielmo*, 5 *Boyce* 289, 92 *A*. 850, a lien was claimed for work and labor on two buildings, but the claim did not designate the amount claimed on each. An exception on that ground was sustained.

Other provisions of the statute have been held to be mandatory. For example, a claim filed after the expiration of the statutory period will be dismissed. *Carswell v. Patzowski*, 4 *Penn.* 403, 55 *A*. 342, 1013; *Voightmann v. Wilmington, etc., Corp.*, 7 *Penn.* 265, 78 *A*. 920. And a mechanics' lien judgment obtained upon a statement of claim filed too late will be stricken off as void on its face. *Hendrix v. Kelly*, 4 *W. W. Harr.* (34 *Del.*) 120, 143 *A*. 460. The claimant's contract must have been made with one of the persons enumerated in the statute; if not, the claim will be dismissed. *Justis Co. v. Spicer*, 5 *Boyce* 534, 95 *A*. 239; *Wilmington Sash & Door Co. v. Nuttall*, 6 *Boyce* 1, 95 *A*. 902.

■ In citing the above cases we do not necessarily approve all of the many decisions of the Superior Court construing the statute. Some of them appear to be based on highly technical grounds. We must also deprecate the tendency to construe the mechanics' lien statute with excessive strictness on the ground that the statute "is in derogation of the common law". This rule is of little aid to construction in modern times. Compare the remarks of Judge Pearson in the Supreme Court in *Blaustein v. Standard Oil Co.*, 4 *Terry* (43 *Del.*) 449, 458, 49 *A.* 2d 726, upon the construction of the foreign attachment statutes.

■ Nevertheless, it is correct to say that the provisions of the mechanics' lien statute embodying the conditions upon which the lien may be obtained must be substantially complied with.

■ We are cited to numerous cases in other jurisdictions holding that a single lien may be obtained upon a group of buildings constituting a unit by a materialman who has furnished materials incorporated into them. These cases announce what we may call the "unitary doctrine" of mechanics' liens. See the cases collected in the annotations in 10 *A. L. R.* 1026, and 75 *A. L. R.* 1328. As observed by Judge Rodney in *Iannoti v. Kalmbacher,* 4 *W. W. Harr.* (34 *Del.*) 600, 156 *A.* 366, care must be exercised in accepting authorities in this field from other jurisdictions. The underlying philosophy of the mechanics' lien statutes may be the same in all the states; but the requirements for obtaining a lien and the methods of enforcement differ greatly. Many cases listed in the annotations above mentioned appear to have involved statutes that contain no express provision with respect to liens claimed on two or more structures. In the absence of express statutory provisions the courts have adopted widely differing views on the scope of the "unitary theory". For example, some of the Connecticut decisions appear to lay down a rule of unity of structure and unity of use as a condition to obtaining a lien on more than one building. See *Wilcox v. Woodruff,* 61 *Conn.* 578, 24 *A.* 521, 1056, 17 *L. R. A.* 314; *Ginsberg v. Capone,* 91 *Conn.* 169, 99 *A.* 501.

Other cases apply the doctrine to structures owned by one person on noncontinguous lots. See the cases listed on pages 1330-1332 in the annotations in 75 *A. L. R.*

We do not enter upon this field of decisional law, since our statute settles the question. A joint lien on two or more structures may be obtained, but it may be obtained only upon the condition of a proper apportionment of the amount of the claim.

Warner lays great stress on the following decisions: *Maryland Brick Co. v. Spilman,* 76 *Md.* 337, 25 *A.* 297, 17 *L. R. A.* 599; *Maryland Brick Co. of Baltimore City v. Dunkerly,* 85 *Md.* 199, 36 *A.* 761; *Fulton v. Parlett & Parlett,* 104 *Md.* 62, 64 *A.* 58; *Humphrey v. Harrison Bros., Inc.,* 4 *Cir.,* 196 *F.* 2d 630; *Warren v. Hopkins,* 110 *Cal.* 506, 42 *P.* 986; *Southern California Lumber Co. v. Peters,* 3 *Cal. App.* 488, 86 *P.* 816; *Hendrickson v. Bertelson,* 1 *Cal.* 2d 430, 35 *P.* 2d 318; *Eccles Lumber Co. v. Martin,* 31 *Utah* 241, 87 *P.* 713; *U. S. Building & Loan Association v. Midvale, etc., Corp.,* 86 *Utah* 506, 44 *P.* 2d 1090.

The first four cases cited involve the mechanics' lien statute of Maryland. The statute considered in the case of *Fulton v. Parlett, supra,* provided that in every case of a joint claim the claim shall designate the amount claimed to be due on each of the buildings, *"otherwise such claim shall be postponed to other lien creditors".* Code 1904, art. 63, § 21. (Emphasis supplied.) The significant difference between the Maryland statute and our statute is apparent. It would seem that under the Maryland statute an owner may not object to the failure to apportion; the consequence of such failure is limited to a postponement of the lien to other lienholders. The Maryland cases are clearly distinguishable. The same comment may be made upon the California cases. See the provisions of the statute quoted in *Southern California Lumber Co. v. Peters, supra.*

The statute construed in the two Utah cases above cited did not appear to include the clause specifying the consequence of failure to apportion; but the leading case in Utah, *Eccles Lum-*

*ber Co. v. Martin, supra,* is distinguishable because the court's reasoning was to a large extent founded on the premise that a mechanics' lien in Utah is primarily a lien on land. The contrary is the case in Delaware. In *Wood & Co. v. Wilmington Conference Academy,* 1 *Marv.* 416, 41 *A.* 89, it appeared that after the filing of a mechanics' lien proceeding the building had been destroyed by fire. It was held that the lien was lost.

On the other hand, the provision of the New Jersey statute requiring apportionment has been held to be mandatory. In a mortgage foreclosure suit to which mechanics' lien claimants were parties, their unapportioned claims were subordinated to the liens of other creditors. *Board v. Freedman,* 99 *N. J. Eq.* 351, 131 *A.* 913; and *cf. Morris County Bank v. Rockaway Mfg. Co.,* 16 *N. J. Eq.* 150.

Other authorities are cited but further discussion is unnecessary. The language of our statute is clear, and leaves no room for the construction urged by Warner.

Warner contends that the owner of the development is not concerned with apportionment because the value of his property as a whole has been enhanced by the value of all the materials supplied. This argument overlooks the fact that apportionment under our statute is a condition precedent to the obtaining of a joint lien, and hence failure to comply with the condition constitutes a defense normally available to any party to the proceeding. The argument comes to this, that apportionment is for the benefit of other lienholders only. But in Delaware other lienholders are not parties to a mechanics' lien proceeding, and if the owner may not raise the defense of apportionment it is hard to see how the statutory requirement could be enforced. We think the owner may raise the defense of noncompliance with any of the essential conditions of the statute.

On behalf of Warner, considerations of hardship are earnestly pressed. It is said that unless the so-called unitary doctrine be given judicial approval a materialman furnishing materials to a building development is deprived of all protection, since in

most cases it is impossible, or at least not feasible, to keep accurate account of the quantity and value of the materials incorporated into each of the structures.

This argument has appeal; but there are countervailing considerations. To apply the unitary doctrine in this case would mean that each house in the development, built for immediate sale to the public, would be subjected to a lien in an amount many times greater than the value of the Warner material incorporated into it. Indeed, some of the houses might be subjected to a lien although all labor and materials entering into them had been fully paid for. The remarks of the Chancellor in *Morris County Bank v. Rockaway Mfg. Co., supra,* are pertinent.

He said:·

"It appears to me that the insuperable objection to permitting a lien for materials furnished for several buildings to.be included in one claim, with no specification of the amount furnished for each, is, that it enables the lienholder to shift the encumbrance at his pleasure, and to place the bulk of the claim upon any building, to an amount far exceeding the value contributed to such building, in contravention of the plain terms and manifest policy of the statute, and in derogation of the rights of other parties."

In the instant case the lien claimed by Warner would cover every house already sold, and the purchaser would have no legal means to discharge the lien except by paying it in full. To this, Warner replies that the purchaser of a newly-built house knows that he must obtain a release of mechanics' liens to get clear title, and if he fails to do so he acts at his peril. This is true. But from whom must he obtain such releases? We think that the statute contemplates no more than that he shall obtain releases in respect of material and labor entering into the house that he is buying. This is, for a prospective purchaser, a sufficiently rigorous requirement, because our statute gives to every laborer and materialman a direct lien for his own claim. *State v. Tobasso Homes, Inc.,* 3 *Terry* (42 *Del.*) 110, 28 *A.* 2d

248. But if Warner is right, a purchaser who had obtained releases in respect of all material supplied to his house might under some circumstances become liable for payment of the lien of other materialmen who had supplied nothing to his property but had furnished materials to other structures in the development. We cannot think that our statute contemplates such a result.

■ Thus, considerations of hardship cut both ways. In such a situation, we must take the statute as we find it and refrain from attempting, by judicial construction, to read into it a theory of recovery at variance with the statute itself. The plain fact is that the Delaware mechanics' lien law is not adapted to deal with the problems arising out of the furnishing of materials and labor to a continuous residential building development. Legislation would seem to be called for; but the courts cannot supply it.

There remains for consideration Warner's contention that if it is required to apportion its claim it has done so.

Attached to the statement of claim as Exhibit C is a list of certain of the lots in the Leedom development, and opposite to each an amount claimed to be due on each of the structures erected on the lots. These amounts were computed in the following manner: Mr. H. F. Peters, President of Masonsteel, determined that the unpaid balance owed by Masonsteel to Warner was 41% of the cost of all materials supplied. He next computed the value of Warner's materials used in each structure. He then multiplied that figure by 41%. The products thus obtained are the amounts claimed to be due in respect of the structures erected on the lots listed in Exhibit C.

■ Such a method is not a substantial compliance with the statute. Warner makes no contention that the structures upon which it claims a lien are those into which were incorporated the materials not paid for. The apportionment required is in effect a specification of the amount due for materials entering into each structure and not paid for. This requirement Warner

has not met. Its claim is prorated but not apportioned as required.

As Judge Carey said in his opinion below dismissing the action:

"If the materials used in House No. 1, for example, were fully paid for, it is wrong to charge against that house a portion of the amount due for materials used in house No. 75." 93 *A.* 2d 316, 319.

Our conclusions are that the requirement of apportionment in our mechanics' lien law is mandatory and that Warner has failed to comply with it.

The judgment of the Superior Court is affirmed.