THOMAS D. WHITTINGTON, t/a Whittington's Sand and Gravel Co., Bear, Delaware, Plaintiff, v. HERMAN SEGAL and HELEN SEGAL, his wife, Defendants.

(*August* 9, 1963.)

LYNCH, J., sitting.

*David P. Buckson* for Plaintiff.

*B. Wilson Redfearn* (of Prickett and Prickett) for Defendants.

Superior Court for New Castle County, No. 157, Civil Action, 1957.

LYNCH, Judge.

This is a mechanics' lien action to recover $1,173.76, alleged to be due for certain supplies delivered to real estate located in White Clay Creek Hundred, New Castle County, Delaware, and owned by defendants.

The third paragraph of plaintiff's Statement of Claim alleges:

"That the *labor and materials* hereinafter referred to *were performed and furnished by* the Plaintiff, Thomas D. Whittington, trading as Whittington's Sand and Gravel Company, *in and for the construction of a driveway* on the lands hereinafter referred to, said driveway being used in the operation of a store erected on said lands, and the construction of the said driveway was *pursuant to a contract between* Thomas D. Whittington, trading as Whittington's Sand and Gravel Company, *Plaintiff, and* Herman Segal and Helen Segal, his wife, *the Defendants, by and through their agent* wherein the said Plaintiff was to furnish the labor and materials hereinafter referred to." (Emphasis supplied)

The Statement of Claim alleged the labor and materials were furnished within the period from September 19, 1956 to October 12, 1956.

The exhibit attached to the Statement of Claim was in the form of a bill in which Newark Fair, Inc. was named the debtor. The bill identifies "Charles Hammer" as "Tenant" and stated the owner was "Herman Segal".

The Building Code of New Castle County provides (Section 104.0):

"Before any individual, partnership, firm or corporation proceeds with the construction, enlargement, alteration, repair or removal of any building, a permit shall first

be obtained from the Building Inspector. In any case in which the construction, enlargement, alteration, repair or removal of any building is to be done by or at the direction of any individual, partnership, firm or corporation other than the owner, it shall be the duty of the said individual, partnership, firm or corporation to procure the said permit, provided, however, the imposition of this duty upon the individual, partnership, firm or corporation which is to do or direct the doing of the work in question shall' not be interpreted so as to relieve any owner or agent from liabilities or penalties provided for in Section 101.4 of this Building Code. In any case in which the said work is to be done by the owner or under his immediate direction, the duty to procure the permit shall rest upon the said owner solely."

Section 100.4 of said Code provides:

"Compliance: All buildings and structures shall be constructed, altered, repaired, used or removed and the equipment of said buildings and structures shall be constructed, altered, repaired, used or removed in full compliance with this Code unless exempted by Section 100.5. All such constructions, alterations, repairs or removals shall be performed only by a contractor or an individual holding a building permit as required below."

Section 104.2 of said Code provides:

"It shall be unlawful for any person, firm or corporation, whether contractor, lessor, agent, or owner, to erect, use, occupy or maintain any building or structure in violation of any provision of this Code, or to cause, permit, or suffer any such violation to be committed. * * *."

Penalties are provided in Section 104.21 of the Code:

"Any person, firm or corporation guilty of a violation of this Code is guilty of a misdemeanor punishable by fine

of not more than Two Hundred Dollars ($200.00) for each offense and the further sum of Ten Dollars ($10.00) for each and every day such violation continues. For the purposes of this section, the violation of any section of this Code shall constitute an individual offense."

After filing their answer, defendants moved for summary judgment. In this connection the Court has had before it (1) copy of the lease dated July 21, 1956 between the defendants and Newark Fair, Inc., named as lessee, which was signed in its behalf by Charles W. Hammer, as President, and Dorothy Hammer, Secretary; (2) affidavit of Herman Segal; (3) affidavit of Thomas D. Whittington, the plaintiff; (4) affidavit of Charles W. Hammer; (5) affidavit of New Castle County Building Inspector; and (6) the verified Statement of Claim, the pertinent provisions of which are quoted supra, p. 534.

Plaintiff opposes the granting of the motion for summary judgment—contending the material before the Court demonstrates the existence of a genuine issue as to material facts. I propose to examine the discovery material that has been placed before me.

The lease, dated July 21, 1956, referred to shows four things:

(a) The cost of any and all alterations to the interior of the building and any redecorating or painting thereof, and the maintenance thereof, shall be borne and paid for by the lessee.

(b) Lessors are to be responsible for the costs of structural repairs to the exterior of the premises and for repairs to the roof of the premises; they were not to be "responsible for costs of other repairs whether structural or otherwise".

(c) The lessee was to make no major alterations to the premises "without the consent of Lessor".

(d) Lessors agreed "they will contribute the sum of Two Thousand Dollars ($2,000.00) to help defray the cost of hard surfacing the parking area surrounding the building herein demised. It is to be noted that plaintiff's verified Statement of Claim alleged the work and materials were furnished in the period from September 19, 1956 to October 12, 1956.

The affidavit of Herman Segal stated:

"* * * that premises located in White Clay Creek Hundred, New Castle County, * * * was fully and completely built early in 1955 and was sold during the summer of 1955 to Cherry Lane Market, Inc., at which time a purchase money mortgage in the sum of $35,000.00 was taken by the defendants above named. * * *. The deponent further avers that at the time the lease was entered into between the defendants herein and Newark Fair, Inc. in August of 1956, the building covered by the said lease had long since been fully completed, to wit, in the summer of 1955, and that at the time the parking lot was paved in October 1956, the paving of the lot could not be and was not part of the construction of the above premises."

The affidavits of Charles W. Hammer and Thomas D. Whittington are less than satisfactory; neither of them states what alterations, repairs, remodeling or improvements were to be made in the period of September 19, 1956 to October 12, 1956. For the most part these affidavits consist primarily of legal conclusions and they set forth no facts and in my opinion they do not meet the tests of an affidavit as found in 2 C.J.S. Affidavits, § 16a (2) and 3 Am.Jur.2d—Affidavits—§§ 20 and 21. I entertain very grave doubt that they meet the test, as

stated in 2 C.J.S. Affidavits, § 18 and 3 Am.Jur.2d—Affidavits—§ 20, page 397. These affidavits are insufficient.

Studying these affidavits in detail I question seriously if they have been "drawn in such a manner that [they] might be the basis of a charge of perjury if any material allegation contained therein is false". See In re Shannahan-Wrightson Hdwe. Co., 5 Penn. 138, 58 A. 1023, 1024 (Super.Ct.1904).

Certainly in light of the clear language of the lease agreement, neither Mr. Hammer nor his corporation had any right or power to make alterations, repairs, do remodeling or make improvements, except to the interior of the buildings on the property. The lease did not make Mr. Hammer defendants' agent.

Then, too, I must give consideration to the recently filed affidavit of the New Castle County Building Inspector, in which he stated:

"(1) On January 25, 1955, a building permit—No. 9632 was issued to CHERRY LANE MARKET, INC., Barksdale and Casho Roads, Newark R.D. #1, Delaware, for the erection of a Farmers' Market.

"(2) If subsequent alterations were made to the building aforementioned, the person or persons making such alterations failed to apply for or obtain a building permit authorizing alterations.

"(3) No building permit is required for the paving of a parking lot."

The broad statement appears in 17 C.J.S. Contracts, § 201 that a contract made in violation of law is illegal.

In light of the affidavit of the Building Inspector that no building permits were issued out of his office since the CHERRY LANE MARKET, INC. was issued in Jan-

uary 25, 1955, I must infer that if work was done on the premises in question, it was done without a permit, and in clear violation of the law. I doubt if it is necessary for a proper determination of the case for me to consider if a contractor, sub-contractor, laborer or materialman must, before performing on a structure or furnishing materials thereto, ascertain if a permit has been issued as provided by law.

This brings me to the contention advanced by defendant, i. e. that this case is governed by *Jones v. Julian* et al., 188 A.2d 521 (Super.Ct.1963) in which I considered and applied 25 *Del. C.*, § 2703. That section provides:

"No lien shall attach in case the improvements are to the land alone, unless a contract in writing, signed by the owner or owners thereof, setting forth the names of all parties to the contract and containing a description by the metes and bounds of the land to be affected and by a statement of the general character of the work to be done, and of the total amount to be paid thereunder, and the amounts of the partial payments, together with the time when such payments shall be due and payable."
That section has never been construed or its meaning made evident or its application stated.

Undoubtedly the plaintiff places reliance on Paragraph 16 of the lease, which reads:

"16. The Lessors covenant and agree they will contribute the sum of Two Thousand Dollars ($2,000.00) to help defray the cost of hard surfacing the parking area surrounding the building herein demised."

In *Jones v. Julian*, supra, it was ruled that since the Statement of Claim in that case did not plead a "contract in writing, signed by the owner or owners thereof", it was insufficient. In the same case it was ruled that the

statute, 25 *Del. C.*, Ch. 27, did not apply to paving and curbing in the absence of such a contract, as is referred to. In the cited case, reference was made to an unreported decision holding that if paving work "is a part of a general building program", it can be the basis of a claim under the Mechanics' Lien Statute. The papers before me do not purport in any wise to show that what plaintiff is suing for here was part of a "general building program; the affidavits do no more than vaguely refer to some repairs and alterations.

An examination of the Statement of Claim shows that plaintiff's Statement of Claim alleged plaintiff had constructed "a driveway on the lands" of the defendants; that the defendants were the owners of the land; and that the labor performed and materials supplied were "pursuant to a contract between" the plaintiff and the defendants allegedly made "by and through their agent".

Thus the question presented is—Did the provision in the lease meet the requirements of Title 25 *Del. C.* § 2703?

That section requires:

(1) A contract in writing signed by the owner or owners setting forth the names of all parties to the contract;

(2) Such contract must contain a description of the land to be affected;

(3) In the contract there must be "a statement of the work to be done"; and

(4) The contract must recite "the total amount to be paid thereunder, and the amounts of the partial payments, together with the time when such payments shall be due and payable".

It is obvious that the language of Section 16 of the lease does not meet the requirement of the statute. It is clear to me that plaintiff has not adduced a written contract which meets the requirements of the statute.

After a study of the statute, I rule, in a case such as is here presented, that Sections 2703 and 2712 of Title 25 *Del. Code* must be read together; and that, in my opinion, would require the statement of claim to allege or refer, at least to the kind of written contract required by Title 25 *Del. C.* § 2703.

Surely, it is not sufficient to say, as does the Statement of Claim, that the contract, as sued on, was made "by and through" the agent of defendants.

Clearly the statute does not provide an agent of an owner can make an oral contract between a materialman, contractor or sub-contractor of the owner and the agent and make it binding on the owner; the statute clearly provides that the contract is not binding unless it is in writing, signed by the owner, and embraces the requirements of the statute.

In this connection it is interesting to point to the interrogatories propounded by defendants and the answers thereto, given by plaintiff's attorney. These answers primarily talk about the testimony of Mr. Hammer would give at trial concerning the authority he obtained "in writing and verbally" to get the work done; he made no reference to a requisite written contract.

It is stated in 57 C.J.S. Mechanics' Liens § 52 and 36 Am.Jur.—Mechanics' Liens—§ 80, that a claim for a mechanics' lien "cannot be asserted unless materials are furnished or labor performed under a valid and enforceable contract or agreement, express or implied, made with the owner or his duly authorized agent". It is stated in 57 C.J.S. Mechanics' Liens § 52, page 541:

"Under various statutes, some of which expressly so provide, a contract with the owner \* \* \* is essential to the establishment of such a lien \* \* \*."

See *Justis Co. v. Spicer*, 5 Boyce 534, 537, 95 A. 239, 240 (Super.Ct.1915) ; see also *Warner Co. v. Leedom Constr. Co.*, 9 Terry 58, 64, 97 A.2d 884, 887 (Sup.Ct.1953) at which page our Supreme Court ruled:

"\* \* \* it is correct to say that the provisions of the mechanics' lien statute embodying the conditions upon which the lien may be obtained must be substantially complied with."

See further *E. J. Hollingsworth Co. v. Continental-Diamond Fibre Company*, 6 W.W. Harr. 303, 175 A. 266 (Super.Ct.1934).

It would appear that Title 25 *Del. C.* § 2705 is one of such statutes, and, in order to acquire a valid lien for installation of paving, the contractor or materialman must comply with the law, and must have "a contract in writing, signed by the \* \* \* owners" and otherwise meeting the requirements of the statute.

Since plaintiff has not complied with the statutory requirements, he cannot acquire a valid lien. This requires the Court to sustain the motion for summary judgment.

Order accordingly.